**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAY – 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ryan Poullard #06429-078                )
(Shangowande Orunmila)                  )
P. O. Box 26020                         )
v. Beaumont, Tx 77720-6020              )      **COMPLAINT FOR DAMAGES**
                                        )
FEDERAL BUREAU OF PRISONS               )
                                        )      Case: 1:07-cv-00825
                                               Assigned To : Unassigned
                                               Assign. Date : 5/4/2007
                                               Description: Peo Se Gen. Civil

## Preliminary Statement

1.  This case raises issues of first impression for the court which pertain to

blatant and malicious Constitutional violations.  The plaintiff is not an attorney

and the issues presented herein are complex.  For that reason, plaintiff respectfully

requests that the court consider appointment of counsel under local Civil Rule

83.11 in order to ensure the proper presentment of his claim.

## Jurisdiction

2.  This court has jurisdiction over this action under 28 U.S.C. § 1331.

## Venue

3.  Venue is appropriate in the District Court for the District of Columbia by

virtue of the provisions of 28 U.S.C. 1391 (e).

## Parties

4.  Plaintiff's mailing address is: Ryan Poullard a/k/a Shangowande Orunmila

# 06429-078, P.O. Box 26020 Beaumont, TX 77720-6020.

5.  Defendant Federal Bureau of Prisons' ("BOP") mailing address is: 320 First St.

N.W. Washington, DC 20534.

### COUNT ONE

6.  On September 24, 2004, plaintiff's religion was approved in accordance with

New and Unfamiliar Religious procedure by the Bureau of Prisons under its proper

name, i.e. "Ifa."  See Exhibit A.  Since this approval the Bureau of Prisons has

RECEIVED "renamed" plaintiff's religion in an attempt to force it into a

religious category that is already established within the federal prison system.

RECEIVED
MAR 09 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

The terms Yoruba/Santeria, General Yoruban Program, Yoruba/Ifa, and Yoruba are being used by the Bureau of Prisons on chapel schedules, faith group lockers, and documents related to plaintiff's religion. Other faith groups are respected and addressed by their proper names but the Bureau of Prisons has treated plaintiff's religion with disgust and disdain. Plaintiff's attempts to resolve this matter have been ignored and/or scoffed at. See Exhibit B. This ongoing disparagment of plaintiff's religion violates his constitutionally protected religious freedoms and it evidences a campaign of religious discrimination on the part of the defendant.

7. On July 19, 2006, plaintiff was transferred from his living quarters in a dormitory type setting in general population, to a locked-cell wherein plaintiff was locked-up 23 hours on week days and 24 on weekends. A falsified incident report and two false memorandums provoked this transfer. Plaintiff was placed on commissary and phone restrictions for 90 days and an infraction was added to plaintiff's chronological disciplinary record. Plaintiff appealed this unlawful use of Bureau disciplinary machinery to both the regional and central offices. Both appeals were denied. See Exhibits C and D.

8. The incident report in question states that "...Counselor Gibbs assisted me by opening inmate Poullard's locker. Upon opening the locker a foul smell came out of inmate Poullard's locker. Upon the opening of the locker I (Counselor L. Mello) discovered several food items that were in decomposing state." See Exhibit E. Counselor Gibbs' supporting memorandum, on the other hand, completely contradicts the reporting officer's claims. He states, "I then opened up inmate Poullard's locker at which was found on the bottom left side of the locker numerous items. Some of the items were cookies, sugar cubes, smoked oysters and various other items that were not sealed in a container or wrapper." See Exhibit F.

9. As the officer who opened plaintiff's locker, Counselor Gibbs would have

-2-

been the first person to notice, or come into contact with any "foul smell" emanating from plaintiff's locker.  He did not notice any "foul smell" nor did he discover any "food items that were in decomposing state."  Case Manager Merendino, who also prepared a supporting memorandum, did not notice any "foul smell" or "food items that were in decomposing state."  See Exhibit G.

10.  At 2:30 PM on 7/19/06, when Merendino and Gibbs arrived at cube 51, plaintiff was not in the housing unit.  Both Merendino and Gibbs had been asked by the reporting officer to examine plaintiff's cubicle.  While the reporting officer did not notice any books on the upper bunk, both Merendino and Gibbs observed "books stacked up on top of the upper bunk."  See  Exhibits E, F, and G.

11.  This huge stack of books, that was not on plaintiff's bunk at approximately 10:30 AM when the reporting officer conducted his rounds, is alleged to have appeared at approximately 2:30 PM while plaintiff was out of the housing unit. Each bunk is equipped with pillow, mattress, and blankets.  Since plaintiff's bed and the making of his bed is not mentioned in the incident report or supporting memorandums, these descriptions prove that plaintiff's bed was made in accordance with policy and unit standards.  See Exhibit H.  Plaintiff's bed was neatly made, as he had left it, when he was called back to the housing unit and this stack of books was not on his bunk.

12.  In the photograph of plaintiff's bunk there is no mattress, there is no pillow, and there are no blankets.  See Exhibit I.  As stated in both Incident Report Supporting Memorandums, "Inmate Cortez, who also lives inside this cubicle, identified that all of the books and papers belonged to inmate Poullard." However, the name "Cortez" is partially visible on one of the books that allegedly "belonged to inmate Poullard."  See Exhibit J.  All of these photographs were taken after the plaintiff had been escorted to the Lieutenant's office.

13.  While confined in S.H.U. for these trumped up charges, plaintiff requested copies of all photos in accordance with the Freedom of Information Act but the

-3-

central office did not acknowledge this request.  See Exhibit K.  Xerox copies

of these photos were attached to plaintiff's DHO report, and although they are

somewhat helpful, color or high quality copies are needed for a more thorough

examination of the evidence.

14.  In the long overdue denials of plaintiff's regional and central office appeals,

the Bureau of Prisons asserts that plaintiff was in possession of contraband

books from the chapel.  This is utterly false.  On August 8, 2006, plaintiff

requested information from the institution's chaplain regarding these charges

and the chaplain's response disproves these "contraband books" allegations.

See Exhibit L.

15.  P.S. 5580.07 page 2, section 3, ¶ (b) states that "Contraband items found

in the possession of inmates or in inmate living or work areas **will be properly**

**identified, processed, and discarded."**  (emphasis added)  The Bureau of Prisons,

in its responses to plaintiff's regional and central office appeals, asserts

that the plaintiff was in "possession of several books belonging to other inmates."

Fifty books were confiscated as contraband and the plaintiff established ownership

of all fifty books on August 18, 2006.  See Exhibit M.  None of the "other

inmates" were identified and contraband, according to the aforementioned policy,

is to be discarded.  Since all of these books were returned to the plaintiff,

they are not, and were never contraband.

16.  C.F.R. § 553.12 states that **"Items possessed by an inmate ordinarily are not**

**considered to be contraband if** the inmate was authorized to retain the item

upon admission to the institution, **the item was issued by authorized staff,**

purchased by the inmate from the commissary, or purchased or **received through**

**approved channels** (to include approved for receipt by an authorized staff member

**or authorized by institution guidelines)."**  (emphasis added)  The Bureau of

Prisons asserts in its responses to plaintiff's appeals that the Technical Manual

for Religious Services found in his possession was contraband, but as stated

in plaintiff's DHO report, this Manual was fowarded to the plaintiff via standard institution mail.  See Exhibit N.

17.  Plaintiff was not aware that said Technical Manual was contraband, and had he known this, plaintiff would not have asked that it be mailed into the institution. Nevertheless, standard institution mail is an approved channel and this channel is "authorized by insitution guidelines."  Mail room staff is responsible for inspecting incoming mail for contraband and once mail is inspected it is then "issued by authorized staff."  The Bureau of Prisons issued the Technical Manual in question to the plaintiff at "mail call."  Now, after having given this Manual to the plaintiff, the defendant has charged and punished the plaintiff for possessing an item that was issued to him through an approved channel "by authorized staff."  These charges and punishment are therefore malicious and unlawful.

18.  In its central office response to plaintiff's appeal the defendant states that "Each of your (plaintiff's) Due Process rights were upheld during the discipline process."  This is a barefaced lie.  Plaintiff, since his transfer from Oakdale FCI in 1998, has maintained constant phone contact with his mother and father who live in Beaumont, Texas.  Plaintiff has often called his parents on a near daily basis for weeks, and occasionally, months at a time.  Although both of the plaintiff's appeals were initially ignored by the defendant, plaintiff's sanctions were not lifted until November 7, 2006, one day before the 90 day term of punishment expired.  See Exhibit O.

19.  By definition, due process is the just and proper method of operation in a procedure or proceeding.  Plaintiff's regional appeal was received at the regional office on August 24, 2006, and on 9/18/06 the mandatory response date for this appeal was extended to October 23, 2006.  The regional office did not respond to plaintiff's appeal within the time frames established by the Code of Federal Regulations, or its own notice of extension, and the defendant refused to lift plaintiff's sanctions as requested in this appeal.  See Exhibit C and D.

-5-

20.  Plaintiff's central office appeal was received at the central office on October 31, 2006, and on 12/7/06 the mandatory response date for this appeal was extended to December 30, 2006.  See Exhibit P.  The central office did not respond to plaintiff's appeal within the time frames established by the Code of Federal Regulations, or its own notice of extension, and the defendant imposed sanctions without permitting the plaintiff to appeal.  When the defendant did respond (in January 2007), plaintiff had already completed the entire term of unjust punishment with the exception of one day.  Plaintiff was denied community and family contact, via telephone use, for 89 days and the defendant showed no consideration for his due process rights.

21.  As a direct and proximate result of the acts of the defendant the plaintiff lost his natural rest and sleep, suffered pain and emotional trauma, depression, humiliation, anxiety and apprehension, and was made to feel that his sincerely held religious beliefs were inferior to the religious beliefs of others.

22.  Deliberately discriminating against a prisoner because of his religious or ethnic attributes or giving a prisoner additional punishment without due process are acts which the Bureau of Prisons knew or should have known, are constitutional violations.  Bivens v. Six unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

### COUNT TWO

23.  As evident by the allegations in paragraphs 6-22 of this complaint, the defendant has knowingly, willfully, and maliciously disparaged plaintiff's religion and has imposed wrongful additional punishment upon the plaintiff without due process. Because of this, plaintiff's constitutional rights have, and continue to be violated.

### Relief Requested

24.  Plaintiff, as a direct and proximate result of the defendant, as aforesaid, has been damaged in the amount of $ 22 million dollars.

-6-

Plaintiff further seeks costs, attorney's fees, and any further relief that the court shall deem just and proper.

## Verification

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Signed this _6th_ day of March, 2007.

Respectfully submitted,

Ryan Poullard # 06429-078
(Shangowande Orunmila)
P.O. Box 26020
Beaumont, TX 77720-6020

-7-

Exhibit A



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

---

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

September 24, 2004

Mr. Ryan Poullard
Reg. No. 06429-078
P.O. Box 26020
Beaumont, Texas 77720-6020

Dear Mr. Poullard,

We have reviewed your request to introduce "Ifa" at FCI Beaumont
(Low).  After a thorough evaluation of your documentation, we
have approved your request.  The Warden may make local decisions
regarding the specific request of this group, taking into
consideration Bureau policy, supervision capabilities, security
interest, and the safe and orderly running of the institution.

Sincerely,

Matt Harness
Regional Chaplaincy Administrator


cc:  R. Childress, Warden
     FCI Beaumont (Low)

Exhibit B

BP S148.055      **INMATE REQUEST TO STAFF MEMBER**           CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                        FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | Date: |
|---|---|
| **Mack Praytor  Supervisory Chaplain** | **11/22/05  (43 A.D.)** |
| From:   **Shangowande Orisha-nla** | Register Number: |
|         Ryan Poullard | **06429-078** |
| Work Assignment:   **Safety** | Unit:   **SA** |

**SUBJECT:**  Briefly state your question or concern and the solution you are requesting.  Continue on the back if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Please provide me with the name of the staff member directly responsible for the "Yoruba/Santeria" and "General Yoruban Program" misnomers that were placed upon the Ifa faith group.  Also, please include the address at which said staff member's official duties are performed.


Thank you for your assistance.


(Do No Write Below This Line)

DISPOSITION:

What?


Signature Staff Member:                    Date:   11/28/05

BP S148.055     **INMATE REQUEST TO STAFF MEMBER**    CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE       **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) | Date: **1rst Submittal**     **2nd Submittal** |
|---|---|
| **Mack Praytor  Supervisory Chaplain** | **11/22/05 (43 A.D.) 11/30/05 (43 A.D.)** |
| From: **Shangowande Orisha-nla** <br> **Ryan Poullard** | Register Number: <br> **06429-078** |
| Work Assignment: <br> **Safety** | Unit: <br> **SA** |

SUBJECT: Briefly state your question or concern and the solution you are requesting. Continue on the back if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Please provide me with the name of the staff member directly responsible for the

"Yoruba/Santeria" and "General Yoruban Program" misnomers that were placed upon the

Ifa faith group. Also, please include the address at which said staff member's

official duties are performed.

Thank you for your assistance.

(Do No Write Below This Line)

DISPOSITION:    What Are you Asking for ?

Signature Staff Member:

_[signature]_

Date: 12/5/05

Submitted on _his  19  day of January, 2007.

BMC 1330.13
[date]
Attachment, A

### Deputy Warden Quintana

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, __Administrative Remedy__
__Program,__(Dec. 22, 1995), requires, in most cases, that inmates attempt
informal resolution of grievances prior to filing a formal complaint.
This form shall be used to document your efforts towards informally
resolving your grievance.

Inmates Name:___Shangowande Orunmila___
___Ryan Poullard_____ Reg. No.__06429-078_____ Unit,__SA__

Specific Complaint and Requested Relief:__My New and Unfamiliar Religious

Components submittal plainly stated that the name of my religion is "Ifa." On September

24, 2004, my religion, "Ifa," was approved for introduction at FCI Beaumont (Low). See

Attachment. The Regional Chaplaincy Administrator's approval letter did not mention Yoruba,

Yoruban/Santeria or General Yoruban Program, only "Ifa." However, my faith group has

been continually referred to, and labeled as, everything but "Ifa." These intentional

misnomers are offensive, discriminatory, and completely unacceptable. This informal

resolution attempt will serve as legal notice. Should any of your subordinates at this

institution use any name other than "Ifa" when addressing, or making reference to my

religion, both you, the CEO of this institution, and said staff member will be personally

liable in civil action. Please address any concerns in your response.

Efforts Made By Inmate To Informally Resolve Grievance(Be Specific)

Counselor's Comments:_____

Submitted on this 19ᵗʰ day of January, 2007.

BMC 1330.13
[date]
Attachment, A

### Chaplain Watanabe

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, Administrative Remedy Program, (Dec. 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmates Name: Shangowande Orunmila Ryan Poullard    Reg. No. 06429-078    Unit, SA

Specific Complaint and Requested Relief: On September 24, 2004, my religion, "Ifa," was approved for introduction at FCI Beaumont (Low). See Attachment. My New and Unfamiliar Religious Components submittal plainly stated that the name of my religion is "Ifa." The Regional Chaplaincy Administrator's approval letter did not mention Yoruba, Yoruban/Santeria or General Yoruban Program, only "Ifa." However, the chapel locker for my faith group bears a Yoruba label. The current chapel schedule lists my faith group as General Yoruban Program. The Catholic faith group is not listed as General Roman Program, nor does its locker bear a Roman label. We are the only faith group that has been intentionally misnomered. This is an offensive, discriminatory & racist gesture that will not be tolerated any longer. Change the label on our chapel locker and our listing on the current chapel schedule to Ifa immediately. If it will not be changed immediately as requested herein, provide me with the name, title, and work address of the staff member(s) directly responsible for this disparaging misnomer.

Efforts Made By Inmate To Informally Resolve Grievance(Be Specific)

Counselor's Comments:

Exhibit C

RYAN EDWARD POULLARD, 06429-078
BEAUMONT LOW FCI    UNT: SA    QTR: S04-055L
P.O. BOX 26025
BEAUMONT,  TX 77720

POULLARD, Ryan                REG. NO. 06429-078    RECEIPTED: 8/24/06

CASE NO. 425337-R1           PART B - RESPONSE


You are appealing the Discipline Hearing Officer (DHO) action of
8/08/06, for Code 305, Possession of Anything not Authorized, and
Code 330, Being Unsanitary or Untidy.

The record of this disciplinary action reflects you were advised
of your rights and afforded the opportunity to exercise those
rights in accordance with Program Statement 5270.07, <u>Inmate
Discipline and Special Housing Units</u>.  After thorough review of
the incident report, the investigation, the evidence and related
documentation, there appears to be sufficient evidence presented
to support the DHO's decision.

This incident involved the DHO finding you possessed contraband
books, a Technical Manual for Religious Services, and finding you
Being Unsanitary or Untidy.  Specifically, on 7/19/06, the
reporting officer discovered you in possession of several books
belonging to other inmates, books from the Chapel, a SENTRY
Technical Manual for Religious Services, as well as decomposing
food items with a foul odor in your locker.  The reporting
officer attempted to resolve the incident informally, which you
refused.  The DHO took into account your statement, and
considered all the facts and evidence at the DHO hearing to make
the determination the greater weight of evidence indicated you
did commit the prohibited acts.

The sanctions imposed are within policy and commensurate with the
finding you committed the prohibited acts in the Moderate
severity category.  You provide no new evidence that has not been
previously considered.

Therefore, your request for relief at the Regional level is
denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, NW, Washington, D.C. 20534.  Your appeal
must be received in that office within 30 days from the date of
this response.


____1/23/07____                    _____
Date                                G. Maldonado, Jr.
                                    Regional Director

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

| From: | Shangowande Orisha-nla a/k/a Poullard, Ryan E. | 06429-078 | SA | FCC Beaumont Low |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**   On 8/8/06, after hearing incident report #1491830, the DHO found that I "committed the prohibited act of Code 305, Possessing unauthorized items and Code 300, Being unsanitary." In section III of the Discipline Hearing Officer Report the DHO stated that photographs were relied upon as evidence and that these photos indicated "the disarray of the area in question to include your locker." The DHO in section VII of this report also states that "possessing unauthorized items and being unsanitary will not be tolerated in the correctional environment. It can have extremely serious repercussions for both staff and inmates, since it tends to result in further disruptive and violent behavior. The sanction of loss of commissary and telephone for 90 days (each) are imposed as an immediate sanction to show you this type of offense is of a serious nature and merits serious sanctions." It is impossible for me to describe how insulting these words are. Nearly two years ago (9/24/04) my religion, Ifa, was approved by the South Central Regional office's Chaplaincy

_____8/17/06_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
DATE

_____
REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 425337-R1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

Administrator.  During the month of October 2004 I made two separate attempts (Remedy ID numbers 354786-F1 and 355510-F1) to request "that all materials and accommodations listed in my New and Unfamiliar Religious Components submittal be made available to the Beaumont Low Ifa community immediately," but these requests were rejected and the issues raised in them were ignored.  I had been harassed by several staff members, on several occasions, for having religious shrines (offerings included) in my locker.  On or about 10/21/04 I submitted a Regional appeal package to my unit Counselor and completed the requisite package form.  This appeal package was held by institution staff for more than two entire months before being forwarded and was subsequently rejected by the Regional Office for being untimely (Remedy ID 354786-R1).  I appealed to the Central Office but this appeal (Remedy ID 354786-A) was also rejected and the issues raised therein were completely ignored.  During the month of August 2005, the Religious Services Department issued a "Memorandum for All Inmate Religious Groups." **See Attachment A.**  This memo instructed inmates to "take the time to review your group's needs for the upcoming fiscal year and type a list of materials by priority (the greatest need at the top of the list)."  Its closing line stated that "prompt attention in this matter will help ensure your community's religious needs are met in the months ahead."  In compliance with this memo, a purchase list for the Ifa community was submitted which clearly indicated that our "greatest need" was an outdoor Ifa lodge at which daily offerings and libations would be made.  **See Attachment B.**  Books were purchased in lieu of the outdoor Ifa lodge materials, and our prayer needs were ignored.  On 6/02/06 I submitted an 'Inmate Request' to Deputy Warden Quintana which addressed several religious needs, including worship materials. **See Attachment C.**  The kind and understanding Deputy Warden denied this request.  **See Attachment D.**  After being handcuffed, escorted and confined to the SHU, having a huge and embarrassing spectacle (photos taken in a housing unit full of nosy and insensitive inmates) made of my religious offerings, sleeping on the floor as the third man in a two man cell for 19 days, and having my religious beliefs questioned and ridiculed by the DHO, the over achieving Chaplain finally decided to tell me how he wants my offerings to be made.  **See Attachment E.**  This is absolutely unreal.  Ifa is not a "tidy religion" and that is why an outdoor Ifa lodge was included in my submittal.  I can not determine what is to be used as an offering (contraband excluded) and neither can the Chaplain, because these determinations are made via divination.  This matter was clearly addressed on page 4 of my Ifa New and Unfamiliar Religious Components submittal.  Furthermore, how can I use hard candies or sealed food items from Commissary if I don't have any money?  Should a believer who is placed on Commissary restrictions, like I am at present, be expected to stop praying until he can purchase an offering that is pleasing to the Chaplain?  I am too upset to continue and I only have one pen, so I have to use its ink wisely since it will be a while before I can buy another one.  Please lift these commissary and phone sanctions immediately, expunge these charges, and see to it that the outdoor Ifa lodge and other religious needs of my faith group are provided with all deliberate speed.

                              Thank you for your assistance.

**Attachment A**



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

**Federal Correctional Complex, Beaumont**                    **Beaumont, Texas 77720**

August 25, 2005

MEMORANDUM FOR ALL INMATE RELIGIOUS GROUPS

FROM:                    MACK PRAYTOR, SUPERVISORY CHAPLAIN

SUBJECT:                Purchases for FY 2006

The Religious Services Department is requesting each religious community to present their requests for books, videos, and other community religious material for FY 2006. Please take the time to review your group's needs for the upcoming fiscal year and type a list of materials by priority (the greatest need at the top of the list). Handwritten lists will not be accepted. This list must be completed and turned in to the Chaplain no later than Monday, October 17, 2005.

While preparing the list keep the following in mind:

1. The list you submit is ONLY A RECOMMENDATION. The Chaplain makes the final determination of what is purchased for the department. Therefore, just because you request something doesn't mean it will be purchased.

2. Due to the recently developed Standard Operating Procedures, materials must be considered religious in nature. These materials will not contain profanity; descrimination based on gender, race or religion; or contain language which may be interpreted as a threat to the safety, security or orderly running of the institution.

3. The Chaplain has the responsibility to manage the budget equitably among the numerous religious groups.

4. Additional lists will not be accepted after October 17, 2005. Any list submitted after October 17 will be returned.

5. Lists that are not typed will be returned.

Thank you for taking the time to assist in this request. Your prompt attention in this matter will help ensure your community's religious needs are met in the months ahead.

07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

cc: AW(C)
       File

<u>**Attachment B**</u>

### FY 2006 Purchase List
### for
### The Ifa Community

| Item/Title | Author/Musician | Vendor # |
|---|---|---|
| 1 Sacred objects and representations for outdoor (Ifa lodge) shrines.  [Shango, Egun (Ancestors),Olokun, Ogun, Oshun, Ibeji, Shopona (Babaluaiye), Yemowo (Yemoja), Orisha-nla (Obatala), Oya, Eshu (Real Eshu Yangi's), Orunmila, and Oduduwa]. | | 2 |
| 2 Orisha carvings and sacred representations for chapel shrines.  [Same as above]. | | 2 |
| 3 Consecrated drums (talking drums included). | | 2 |
| 4 Beaded calabashes. | | 2 |
| 5 Gongs. | | 2 |
| 6 White candles. | | 2 |
| 7 Consecrated Black Soap. | | 2 |
| 8 Congregational Obi Divination Implements (Straw casting tray included). | | 2 |
| 9 Containers (cups or small dishes) for water to be used in chapel meetings. | | – |
| "Ifism: The complete Works of Orunmila" (All Volumes). | C. Osamaro Ibie | 1 |
| "The Sacred Ifa Oracle" | Afolabi A. Epega & Phillip Neimark | 1 |
| Materials for Offerings [Kolanuts (plain, bitter, & white), cowrie shells, Red Parrot feathers, Peacock feathers, Loose Beads & fishing line or suitable substitute for stringing beads]. | | 2 |
| Traditional straw prayer mats. | | 2 |
| Pillows for meditation and divination. | | – |
| Incense [Myrrh, Sweet Almond, Frankincense (olibanum), Rose, Lavender, Jasmine, Sage, Lotus, Cedarwood, Honeysuckle, Cinnamon, Lily of the Valley, Jasmine, Spearmint, & Sandalwood]. | | – |
| "Yoruba: Mo On Ko, Mo On Ka; Know how to Write It, Know how to Read It." | Adebusola Onabajo Onayemi | 3 |
| Egbe Omo Anago Series– Orisha Obatala Parts 1&2 | Cassettes | 1 |
|     " Orisha Oshun Parts 1&2 | | |
|     " Orisha Shango Parts 1&2 | | |
|     " Orisha Ogun | | |
| CD– Festival of Deities | Chief Bolu Fatunmise | |

07 0825

FILED

MAY – 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Item/Title | Author/Musician | Vendor # |
|---|---|---|
| "African Drumming" (Video) | Babatunde Olatunji | 5 |
| "Yoruba Modern Practical Dictionary: Yoruba-English; English-Yoruba." | J. Fakinlede | 4 |
| "Kalani: African Beats" | Video | 5 |

## Vendors

#1– Yoruba Book Center
   610 New York Ave.
   Brooklyn, NY 11203
   Tel: (718) 774-5800
   Fax: (718) 467-0099
   Email:
   atheliahenriettapress@yahoo.com

#2– Ile Awise Ifa
   4321 Cardinal Drive
   Dallas, Tx 75216
   Tel: (214) 372-3754
       (214) 372-3637

#3– Bis Bus International
   40 Alana Drive
   Barrie, Ontario
   L4N 7K8 CANADA
   Tel: (705) 728-1697
   Tel/Voice Mail/Fax: (705) 728-0980
   Email: info@learnyoruba.com
   Web site: www.learnyorub.com

#4– Barnes & Noble

#5– Warner Bros. Publications
   15800 NW 48th Avenue
   Miami, Florida 33014
   Tel: 1-800-327-7643
       (305) 620-1500
   Fax: (305) 621-4869
   Email:
   wbpsales@warnerchappell.com

**Attachment C**

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 93
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) **Deputy Warden Quintana** | DATE: **6/02/06 (43 A.D.)** |
|---|---|
| FROM:  **Shangowande Orisha-nla** Ryan Poullard | REGISTER NO.: **06429-078** |
| WORK ASSIGNMENT: **SA Unit Orderly** | UNIT: **SA** |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I am a devotee of Ifa, an officially approved faith group that was authorized for introduction at this facility well over a year ago. However, the materials, requisite accommodations, and the meeting of our fundamental religious needs have been totally neglected by institution staff. We are the only non-christian faith group that does not have its own locker for supplies and literature. The approved "New & Unfamiliar Religious Components" submittal stipulated two meetings per week, one for study/instruction and the other for prayer/meditation, but more than a year later this simple need has not been met. Worship materials were also included in this approved submittal, but more than a year later we have none. We are the only faith group in the Bureau of Prisons that is not allowed to celebrate its holy days, even though these holy days were officially approved via "New & Unfamiliar Religious Components" established procedure. In May 2006,

(Do not write below this line)

DISPOSITION:

07 0825
FILED
MAY - 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**Attachment D**

**RESPONSE TO INMATE REQUEST TO STAFF MEMBER**


POULLARD, RYAN
Reg. No. 06429-078
Unit: SA


This is in response to your Inmate Request to Staff dated June 6, 2006, in which you state your religious needs are being neglected by staff. Additionally, you note your group does not have it's own locker for supplies and literature. Further you request two meetings per week instead of one, and you claim worship materials have not been purchased for your group. Finally, you remark you are not allowed to celebrate your holy days. An investigation of your request reveals Ifa, your religion, has been approved to meet during the same time and space as other Yoruban-based religious groups. The Yoruban group has a locker and is labeled accordingly. There are several religious groups who meet once a week in the Chapel. On May 7, 2006, the General Yoruban group's time in the Chapel was doubled from one to two hours for the weekly scheduled meeting. Books and literature you have requested have been purchased. Other items will be forth coming as the budget allows.

Regarding your request to observe June 8 and 9, 2006, as days of work proscription to observe "Shopona," the chaplain requested you to provide documentation that your religion mandates these days off from work to observe work proscription. As of today's date, you have not provided sufficient documentation to confirm why you cannot work on the days you requested. Therefore, your request is denied.


_____              _6-13-06_____
Francisco J. Quintana, Deputy Warden          Date


07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Attachment E**

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Chaplain Watanabe | DATE: 8/9/06 |
|---|---|
| FROM: Sàngowàndé Orisa-nla  Ryan Poullard | REGISTER NO.: 06429-078 |
| WORK ASSIGNMENT: Unit Orderly | UNIT: SA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Since the institution has not provided my faith group's approved outdoor Ifá lodge, I have had no choice but to place my daily prayer offerings in my locker. Because I didn't have a chapel memo or some sort of written permission to pray, I was written an incident report and taken to the S.H.U. for having offerings in my locker. Please give me some sort of written permission to use my locker as a substitute for the approved outdoor Ifá lodge.

Thank you.

(Do not write below this line)

DISPOSITION:

07 0825

FILED

MAY – 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**TO: POULLARD, RYAN**          **FCC BEAUMONT (Low)**
**Reg. No#. 06429-078**
**Unit: SA**

**SUBJECT: Offerings in your locker**

This is in response to your Inmate Request to Staff dated August 9, 2006 in which you request a memo granting permission to use your locker as an alter.

An investigation to your request reveals we are not forbidding the use of the locker as an alter or shrine for your religion. However, it is never permissable to keep spoiled or rotten food in the locker. As an alternative, use hard candies or sealed food items from Commissary. If the food begins to spoil, dispose of it in a timely manner. A memo circumventing hygenic policies cannot be issued from this office.

Thank You,

James Watanabe, Chaplain

Where in my request did I ask for a memo circumventing hygenic policies?

Exhibit D

RYAN EDWARD POULLARD, 06429-078
BEAUMONT LOW FCI     UNT: SA     QTR: S04-055L
P.O. BOX 26025
BEAUMONT,  TX 77720

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: __Shangowande Orunmila__
       __a/k/a Poullard, Ryan E.__        06429–078        SA        FCC Beaumont Low
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL**    On 8/24/06, my regional appeal of incident report # 1491830 was received at the Regional Office. On 9/18/06 the mandatory response date for this appeal was extended to 10/23/06. It is now 4:08 PM on this 24th day of October, 2006, and I have not received the requisite response. However, my phone and commissary accounts are still presently restricted. Please lift these sanctions immediately, remove these charges from my chronological disciplinary record, and see to it that the outdoor Ifa lodge and other religious needs of my faith group are provided with all deliberate speed.

Thank you for your assistance.

__10/24/06__
DATE                                        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

# RECEIVED

OCT 3 1 2006

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE                                        _____
                                            GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: _____

**Part C—RECEIPT**                          CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION
SUBJECT: _____

**Administrative Remedy Number 425337-A1**
**Part B - Response**

You appeal the August 8, 2006, decision of the Discipline
Hearing Officer (DHO) regarding incident report #1491830, in
which you were found to have committed the prohibited act of
Possession of Anything Not Authorized, Code 305 and Being
Unsanitary or Untidy, Code 330.  You request expungement of the
incident report.

Our review of your disciplinary proceedings indicates
substantial compliance with Program Statement 5270.07, Inmate
Discipline and Special Housing Units.  The DHO's decision was
based upon the greater weight of the evidence as detailed in
Section V of the DHO report.  We find it reasonable for the DHO
to have made this determination.  Records indicate you appeared
before the DHO, were advised of your rights, and made a
statement.  The DHO gave greater weight of the evidence to the
reporting officer's account of the incident.  Although you
dispute the charge, the evidence is sufficient to support the
finding.

On July 19, 2006, the reporting officer discovered you in
possession of several books belonging to other inmates, books
from the Chapel, a SENTRY Technical Manual for Religious
Services, as well as decomposing food items with a foul odor in
your locker.  The reporting officer attempted to resolve the
incident informally, which you refused.  We find the DHO met the
standards of fairness, impartiality, and burden of evidence on
witch to base the finding you committed the prohibited act as
charged.

Based on our review of the disciplinary record, we find the
required disciplinary procedures were substantially followed.
Each of your Due Process rights were upheld during the
discipline process.  The greater weight of the evidence supports
the DHO's decision, and the sanctions imposed were commensurate
to the severity level of the offense and in compliance with
policy.

Your appeal is denied.


January 31, 2007
Date

Harrell Watts, Administrator
National Inmate Appeals

Exhibit E

## INCIDENT REPORT

14911830

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| 1. NAME OF INSTITUTION: **FCI BEAUMONT-LOW** | | | | |
|---|---|---|---|---|

### PART I  -  INCIDENT REPORT

| 2. NAME OF INMATE:<br><br>Poullard, Ryan  Edward | 3. REGISTER NUMBER:<br><br>06429-078 | 4. DATE OF INCIDENT:<br>07-19-2006 | 5. TIME:<br><br>2:40 PM |
|---|---|---|---|
| 6. PLACE OF INCIDENT:<br><br>UNIT SA | 7. ASSIGNMENT:<br><br>ORDERLY UNIT SA | 8. UNIT:<br><br>s04-051u | |

| 9. INCIDENT:refusing to obey an order of any staff member<br>                 possession of anything not bauthorized<br>                 being unsanitary or untidy<br>                 stealing , including data/printouts from automated equipment<br>                 adulteration of any food or drink. | 10. CODE307/305/330/219/209 |
|---|---|

11. Description of Incident  (Date:07-19-2006 Time:10:30 AM    Staff became aware of incident)
At approximately 10:30 AM while conducting unit rounds I walked  in to cell S04-051U and discovered several books and several stacks of what appeared to be personal papers. Knowing that this items posed both a safety and a security concerned , I ask inmate  Poullard # 06429-078 if this items belong to him? inmate Poullard acknowledge to being the owner of all the items that I pointed out to him in  cell s04-051u I than  explained to him that he needed to move all his personal papers and books to the units center storage , I also explained to him that cell 51-u is a handicap cell and that the room was getting to crowded due to three inmates being housed in that cell and one of the inmates is a paraplegic person. Inmate Poullard stated to me that he was tired of being told about his property, inmate further stated that he needed to have all this items in his cell  due to his ongoing legal battle with the BOP and that all his books were all religious materials.

At 2:40 PM After several attempts to informally resolve the problem , Inmate Poullard became  verbally aggressive and became  more defiant to move her personal property to the storage room. Inmate Poullard  made the following statements I will not move this religious books or legal work , I need
an extra locker to put this items in this cell. During this time Counselor Gibbs assisted me by opening inmate's Poullard locker, Upon opening the locker a foul smell came out of  inmate Poullard 's  locker. Upon the opening of the locker I discovered several  food items that were in decomposing state . At this point Case Manager Merendino explained to inmate Poullard that he needed to remove all that wasted food items ,inmate Poullard stated that it was his religious offerings. I explained to him that  no special permission was given to him to place and store wasted food, I explained to him the safety and the sanitary problems that myself and Mr. Merendino had? At this point I ordered inmate Poullard to clean his entire area and to remove the wasted material and to place his personal papers and books to the center storage. Inmate Poullard refused by making the following statement " If you want me to clean my religious food offerings, send me to the hole" inmate Poullard was escorted to the Lieutenants office and was placed in the Special Housing Unit. During the inventory of inmate Poullards property I discovered several books that belong to other inmates and to the FCILBeaumont Chapel. A Sentry Technical Manual for religious services was also found on his property. several copy's of his  staff request were  found with his name on them detailing sentry terminology.

07 0825
FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| 12. SIGNATURE OF REPORTING EMPLOYEE: | TIME AND DATE<br>6:00PM / 07-19-2006 | 13. NAME AND TITLE (Printed):<br><br>L.Mello, Counselor unit SA |
|---|---|---|
| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED<br>7/20/06 | 16. TIME INCIDENT REPORT DELIVERED<br>9:5 |

### PART II - COMMITTEE ACTION

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT: I did not refuse to remove books and papers. SCRO approved my religion which requires daily offerings. They do not give adequate space so I had to keep it in my locker. Based on eyewitness report and written version and statements of other witnesses.

| 18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU: | B. ____ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING |
|---|---|
| ____ COMMITTED THE FOLLOWING PROHIBITED ACT.<br><br>____ DID NOT COMMIT A PROHIBITED ACT. | C. ____ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDAR DAYS. |

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION: Refer to DHO and recommend dissalow GT, change of quarters, and commissary restriction. 07/21/06, at 2:50pm

Exhibit F



**U.S. Department of Justice**

*Federal Bureau of Prisons*

---

*Beaumont, Texas  77720*

07-19-2006

MEMORANDUM FOR  Incident Report Supporting Memo

FROM:                    D. Gibbs, Correctional Counselor

SUBJECT:               Inmate Poullard #06429-078

     Counselor Mello asked me and Case Manager Merendino to walk over to cube 51 in SA. When we arrived at cube 51, I observed numerous books and papers stacked up against the wall inside the cubicle. There were books also stacked up on top bunk.  This bunk is assigned to inmate Poullard #06429-078.  These books and papers were <u>identified by inmate Cortez,</u> who also lives inside this cubicle, as to belonging to inmate Poullard.  Counselor Mello then contacted control center and requested that inmate Poullard return to the unit SA.  I then opened up inmate Poullard's locker at which was found on the bottom left side of the locker numerous items.  Some of the items were cookies, sugar cubes, smoked oysters and various other items that were not sealed in a container or wrapper. Inmate Poullard arrived and Counselor Mello asked inmate Poullard why he did not get rid of the books that he was asked to.  Inmate Poullard stated that he did not have enough room in his locker to place the items. Case Manger Merendino asked inmate Poullard as to why he did not have enough room in his locker. Inmate Poullard stated that his locker was used as his offering place. He then stated that the Bureau of Prisons had not provided him a place outside the housing unit to place his religious offerings and he was forced by the Bureau of Prisons to place the offerings inside his locker. Inmate Poullard was given a direct order by Counselor Mello  to clean his area up and put the books and papers away. Inmate Poullard stated if you can just send me to special housing if you make me do that. Inmate Poullard continued to be defiant towards Counselor Mello by not following his orders to clean his cell.

07  0825

FILED

MAY — 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit G



**U.S. Department of Justice**

*Federal Bureau of Prisons*

_____

*Beaumont, Texas  77720*

07-19-2006


MEMORANDUM FOR  Incident Report Supporting Memo

FROM:              S. Merendino

SUBJECT:           Inmate Poullard 06429-078


On 07-19-2006 at approximately 2:30 P.M., Counselor Mello asked me to walk over to Cube 51 in SA. Upon arrival, I observed numerous books and papers stacked up against the wall inside the cubicle. Additionally, there were books stacked up on top of the upper bunk. This bunk is assigned to inmate Poullard 06429-078. Inmate Cortez, who also lives inside this cubicle, identified that all of the books and papers belonged to inmate Poullard. Counselor Mello contacted control and requested that inmate Poullard return to the unit. Counselor Gibbs opened up inmate Poullard's locker. On the bottom left side of the locker, there were numerous items laying on the bottom. Some of the items were cookies, sugar cubes, smoked oysters and various other items that were not sealed in a container or wrapper. Upon the arrival of inmate Poullard, Counselor Mello asked inmate Poullard why he had not put away the books that he was asked to do by Counselor Mello. Inmate Poullard stated that he did not have enough room in his locker to place the items. I asked inmate Poullard what the items were for in the bottom of his locker, and he replied that it was a religious offering for his religious beliefs. He stated that the Bureau of Prisons had not provided him a place outside the housing unit to place his religious offerings and he was forced by the Bureau of Prisons to place the offerings inside his locker. By placing these items inside his locker, it clearly is a sanitary issue inside the cubicle. Counselor Mello attempted to counsel inmate Poullard but kept getting interrupted by inmate Poullard. I informed inmate Poullard that he could not leave the books and papers laying out and the items needed to be placed inside his locker, and he replied that he would not be able to due to having to display his religious offerings inside his locker. I informed inmate Poullard if he needed a place for his legal material that he would provide him a place in a secured area that he would have access to these materials and he replied that he did not want to do this because he has had staff steal his paperwork in the past. Counselor Mello gave inmate Poullard a direct order to clean his area up and put the books and papers away and inmate Poullard stated if you are going to make me do that you can just send me to special housing. Counselor Mello stated to inmate Poullard that going to special housing would not solve the problem. Inmate Poullard continued to be defiant towards Counselor Mello, Counselor Gibbs, and me. At this time, Counselor Mello and Counselor Gibbs escorted inmate Poullard to the Lieutenant's office.

07 0825

FILED

MAY — 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit H





07 0825

FILED

MAY — 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit I



07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit J



07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>Exhibit K</u>

To:                                    Date:

Case Manager Garrison                  7/30/06 (43 A.D.)

From:                                  Reg#:

Sangowande Origa-la                    06429-078
Ryan Poullard

Work Assignment: Unit Orderly          Unit:

                                       5A (currently in S.H.U.)


Subject:

    In accordance with the 'Freedom of Information Act' please provide me with copies of the "statements of other witnesses" mentioned in section 19 of incident report number 1491830 along with all other documents and/or photos that will be used against me in the upcoming DHO hearing. These copies will be absolutely necessary for the preparation of my defense.

                    Thank you for your assistance.



Disposition: Mr. Poullard, the incident report and all supporting documents were forwarded to the DHO. Accordingly, I do not have access to the items you have requested. Furthermore, any FOIA requests need to be made to the Central Office at the following address:
    Director FBOP
    FOIA/PA Request
    320 First street NW
    washington, DC. 20534                              07 0825

Signature of Staff Member:              Date: 8/1/06        FILED

                                                    MAY - 4 200

                                          NANCY MAYER WHITTINGTON
                                             U.S. DISTRICT COURT

Freedom of Information Request

August 6, 2006

Dear Sir,

Please provide me with copies of all written statements, photos, and documents that were used by FCI Beaumont-Low staff members to support the acts alleged in FBOP Incident Report # 1491830. This incident report was written by Correctional Counselor L. Mello at 6:00 PM on 7/19/06, delivered to myself on 7/20/06, referred to the DHO by the UDC at 2:20 PM on 7/21/06, and is presently in the possession of the DHO assigned to Beaumont's Federal Correctional Complex. To refute these allegations, and prepare appeals (if applicable) these copies will be an absolute necessity.

Thank you for your assistance,

Sàngówàndé Orìsà-nlá
a/k/a Ryan Poullard

Exhibit L

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Chaplain Watanabe | DATE: 8/8/06 |
|---|---|
| FROM: Sangowande Orisa-nla  Ryan Poullard | REGISTER NO.: 06429-078 |
| WORK ASSIGNMENT: Unit Orderly | UNIT: SA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

If the chapel prepared a stolen or delinquent book list
since you have been assigned to the low security institution, please
provide me with a copy, ~~the names an~~ Also, were any books
stolen from or reported as missing from my faith group's locker

Thank you.

(Do not write below this line)

DISPOSITION:

1. Not at this time.
2. None were reported missing.

07 0825
FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature Staff Member | Date 8/8/06 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)     This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Exhibit M

**U.S. Department of Justice**

Federal Bureau of Prisons

**Confiscation and Disposition of Contraband**

_J. Mello_

Signature/Printed Name of Staff Member Confiscating Property

_FCLL Bmt_

(Institution)

| 1. Name: _Poullard, Ryan_ | 2. Register No.: _06429-078_ | 3. Unit: _SA_ | 4. Date: _7-19-06_ |
|---|---|---|---|

5. The contraband listed below was found in possession of, or in the living quarters of the above named inmate on _7-19-36_

(Make a numerical list of contraband) ①

_50 books with NO I.D._

6. (To be completed by inmate) I have received a list of those items confiscated as contraband. I claim ownership of the following items (identify by number from section 5 above): Nos. ____1____ . I am aware that a claim of ownership will not be accepted for any item of government property. With respect to my claimed personal property, I am aware that I have 7 days from receipt of this inventory to provide staff with evidence of my ownership of the claimed items.

I, X_____ , received a copy of this inventory on _7-19-06_ .
(inmate's signature)                                              (date)

7. Of the contraband listed in section 5 above, the inmate has established ownership for the following (identify by number from section 5 above): Nos. _____

Contraband, other than hard contraband, may be mailed at the inmate's expense to a destination of the inmate's choice. The institution may pay for the mailing when the inmate has insufficient funds and no likelihood of receiving new funds. Where the inmate is financially able to pay postage, but refuses, or fails to provide a mailing address for return of the property, the confiscated property will be disposed of through approved means, including destruction of property.

I have read or had read to me the above information. I request the following action be taken in regards to my contraband property.

a. __ I request the property be mailed to _____

_____ . I agree to pay mailing costs.

Inmate's Signature: _____ Date: _____

b. __ I request the institution to pay mailing costs. I have insufficient funds in my institution account and do not expect to receive new funds. (The approval of the Warden or designee is required for the institution to pay postage.)

Inmate's Signature: _____ Date: _____

c. __ Other (specify, e.g., donate to institution) _Returned 2 books  Donated 4 books total_

Inmate's Signature: _____ Date: _8-18-06_

8. The following contraband (identify by number from section 5 above) has been determined to be hard contraband or to be contraband for which no ownership has been established. The contraband has been disposed of by (indicate disposition/reasons): Nos. _____

| Signature/Printed Name of Staff Member Determining Method of Disposal | 07 0825 | Date |
|---|---|---|
| Signature/Printed Name of Staff Member Disposing of Property | FILED | Date |
| When Property is Destroyed, Signature/Printed Name of Staff Witness | MAY - 4 2007 | Date |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

cc: Central File
    Chief Correctional Supervisor
    Inmate Systems Manager
    Inmate

Printed on Recycled Paper

BP-402(58)
January 1983
USP LVN

Exhibit N

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | FCIL Beaumont, Texas | INCIDENT REPORT NUMBER | | 1491830 | |
|---|---|---|---|---|---|
| INMATE NAME | POULLARD, Ryan | REG NO | 06429-078 | UNIT | SA |
| DATE OF INCIDENT | July 19, 2006 | DATE OF INCIDENT REPORT | | July 19, 2006 | |
| OFFENSE CODE (S) | 305 / 330 | | | | |
| SUMMARY OF CHARGES | Possessing anything unauthorized / Being unsanitary | | | | |

## I    NOTICE OF CHARGE (S)

A.    Advanced written notice of charge (copy of Incident Report) was given to inmate on July 20, 2006, at 9:50 am, by C. Jack, Lieutenant.

B.    The DHO Hearing was held on August 8, 2006, at 10:15 a.m.

C.    The inmate was advised of his/her rights before the DHO on July 21, 2006, by S. Baird, Unit Team and a copy of the advisement of rights form is attached.

## II    STAFF REPRESENTATIVE

| A.    Inmate waived right to staff representative | Yes | x | | No | |
|---|---|---|---|---|---|

B.    Inmate requested staff representative and    N/A    appeared.

C.    Requested staff representative declined or could not appear, but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:    N/A

| D.    Staff representative | N/A | | was appointed. |
|---|---|---|---|

E.    Staff representative statement:  N/A

## III    PRESENTATION OF EVIDENCE

| A.    Inmate admits | | denies | | neither | x | the charges. |
|---|---|---|---|---|---|---|

B.    Summary of inmate statement:   "The Bureau does not provide me with a space to offer my sacrifice. so I have my sanctuary in part of my locker.  I do not have enough room in my locker for my personal stuff.  My family sent me the technical manual along with some tarot cards."

| 1.    The inmate requested witness (es) | Yes | x | | No | |
|---|---|---|---|---|---|

2.    The following persons were called as witnesses at this hearing and appeared (include each witnesses' name, title, reg number and statement as appropriate):  N/A

3.    The following persons requested were not called for the reason (s) given:   witnesses (staff) provided supporting memorandums used by DHO - cannot call as witnesses.

| 4.    Unavailable witnesses were requested to submit written statements | Yes | | | No | | | N A | X |
|---|---|---|---|---|---|---|---|---|

MAY — 4 200

07 0825

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Exhibit O**

```
  BMLGE        *           INMATE DISCIPLINE DATA        *      02-25-2007
PAGE 001 OF 001 *    CHRONOLOGICAL DISCIPLINARY RECORD    *      10:08:09

REGISTER NO: 06429-078 NAME..: POULLARD, RYAN EDWARD
FUNCTION...: PRT          FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 02-25-2007
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1491830 - SANCTIONED INCIDENT DATE/TIME: 07-19-2006 1440
DHO HEARING DATE/TIME: 08-08-2006 1015
FACL/CHAIRPERSON.....: BML/KELLEY A
APPEAL CASE NUMBER(S): 425337
REPORT REMARKS.......: ADMITTED ITEMS WERE IN LOCKER DUE TO RELIGIOUS REASONS
                       COULD NOT PUT PERSONAL ITEMS LOCKER DUE TO NO SPACE
    305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
         LP PHONE   / 90 DAYS / CS
         COMP:    LAW:    LOSS PHONE UNTIL 11-08-2006
    330  BEING UNSANITARY OR UNTIDY - FREQ: 1
         LP COMM    / 90 DAYS / CS
         COMP:    LAW:    LOSS OF COMMISSARY UNTIL 11-08-2006
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1317842 - SANCTIONED INCIDENT DATE/TIME: 03-03-2005 1255
UDC HEARING DATE/TIME: 03-08-2005 1945
FACL/UDC/CHAIRPERSON.: BML/SA/THOMAS
REPORT REMARKS.......: 10 HOURS EXTRA DUTY
    311  FAILING TO WORK AS INSTRUCTED - FREQ: 1
         EXTRA DUTY / 10 HOURS / CS
         COMP:    LAW:    10 HOURS EXTRA DUTY
```

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>Exhibit P</u>

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: DECEMBER 7, 2006


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : RYAN EDWARD POULLARD, 06429-078
      BEAUMONT LOW FCI    UNT: SA    QTR: S04-055L


ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID       : 425337-A1
DATE RECEIVED   : OCTOBER 31, 2006
RESPONSE DUE    : DECEMBER 30, 2006
SUBJECT 1       : DHO APPEAL - EVIDENCE
SUBJECT 2       : DHO APPEAL - SANCTION
INCIDENT RPT NO: 1491830


07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**ATTESTATION**
**COMPLAINT FOR DAMAGES**

UNITED STATES DISTRICT COURT          )
FOR THE DISTRICT OF COLUMBIA          )      ss.

COMES NOW, Ryan Poullard (Shangowande Orunmila), the plaintiff in the above

entitled action, and states under his oath and under the pains and penalties of

perjury that the allegations contained in the foregoing complaint wherein he is

the plaintiff and the Federal Bureau of Prisons is the defendant, are the truth

according to his best knowledge, information, and belief.

IN WITNESS WHEREOF, he has signed his name hereto this 6th day of

March, 2007.

                                        Ryan Poullard
                                    (Shangowande Orunmila)
                                      Plaintiff, pro se

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAY – 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ryan Poullard #06429-078                     )
(Shangowande Orunmila)                       )
P.O. Box 26020                               )
v. Beaumont, Tx 77720-6020                   )
                                             )
FEDERAL BUREAU OF PRISONS                    )

**COMPLAINT FOR DAMAGES**

Case: 1:07-cv-00825
Assigned To : Unassigned
Assign. Date : 5/4/2007
Description: Peo Se Gen. Civil

## Preliminary Statement

1.  This case raises issues of first impression for the court which pertain to blatant and malicious Constitutional violations.  The plaintiff is not an attorney and the issues presented herein are complex.  For that reason, plaintiff respectfully requests that the court consider appointment of counsel under local Civil Rule 83.11 in order to ensure the proper presentment of his claim.

## Jurisdiction

2.  This court has jurisdiction over this action under 28 U.S.C. § 1331.

## Venue

3.  Venue is appropriate in the District Court for the District of Columbia by virtue of the provisions of 28 U.S.C. 1391 (e).

## Parties

4.  Plaintiff's mailing address is: Ryan Poullard a/k/a Shangowande Orunmila # 06429-078, P.O. Box 26020 Beaumont, TX 77720-6020.

5.  Defendant Federal Bureau of Prisons' ("BOP") mailing address is: 320 First St. N.W. Washington, DC 20534.

### COUNT ONE

6.  On September 24, 2004, plaintiff's religion was approved in accordance with New and Unfamiliar Religious procedure by the Bureau of Prisons under its proper name, i.e. "Ifa."  See Exhibit A.  Since this approval the Bureau of Prisons has consistently "renamed" plaintiff's religion in an attempt to force it into a religious category that is already established within the federal prison system.

RECEIVED

MAR 0 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

The terms Yoruba/Santeria, General Yoruban Program, Yoruba/Ifa, and Yoruba are being used by the Bureau of Prisons on chapel schedules, faith group lockers, and documents related to plaintiff's religion.  Other faith groups are respected and addressed by their proper names but the Bureau of Prisons has treated plaintiff's religion with disgust and disdain.  Plaintiff's attempts to resolve this matter have been ignored and/or scoffed at.  See Exhibit B.  This ongoing disparagment of plaintiff's religion violates his constitutionally protected religious freedoms and it evidences a campaign of religious discrimination on the part of the defendant.

7.  On July 19, 2006, plaintiff was transferred from his living quarters in a dormitory type setting in general population, to a locked-cell wherein plaintiff was locked-up 23 hours on week days and 24 on weekends.  A falsified incident report and two false memorandums provoked this transfer.  Plaintiff was placed on commissary and phone restrictions for 90 days and an infraction was added to plaintiff's chronological disciplinary record.  Plaintiff appealed this unlawful use of Bureau disciplinary machinery to both the regional and central offices.  Both appeals were denied.  See Exhibits C and D.

8.  The incident report in question states that "...Counselor Gibbs assisted me by opening inmate Poullard's locker.  Upon opening the locker a foul smell came out of inmate Poullard's locker.  Upon the opening of the locker I (Counselor L. Mello) discovered several food items that were in decomposing state."  See Exhibit E.  Counselor Gibbs' supporting memorandum, on the other hand, completely contradicts the reporting officer's claims.  He states, "I then opened up inmate Poullard's locker at which was found on the bottom left side of the locker numerous items.  Some of the items were cookies, sugar cubes, smoked oysters and various other items that were not sealed in a container or wrapper."  See Exhibit F.

9.  As the officer who opened plaintiff's locker, Counselor Gibbs would have

-2-

been the first person to notice, or come into contact with any "foul smell" emanating from plaintiff's locker. He did not notice any "foul smell" nor did he discover any "food items that were in decomposing state." Case Manager Merendino, who also prepared a supporting memorandum, did not notice any "foul smell" or "food items that were in decomposing state." <u>See</u> Exhibit G.

10. At 2:30 PM on 7/19/06, when Merendino and Gibbs arrived at cube 51, plaintiff was not in the housing unit. Both Merendino and Gibbs had been asked by the reporting officer to examine plaintiff's cubicle. While the reporting officer did not notice any books on the upper bunk, both Merendino and Gibbs observed "books stacked up on top of the upper bunk." <u>See</u> Exhibits E, F, and G.

11. This huge stack of books, that was not on plaintiff's bunk at approximately 10:30 AM when the reporting officer conducted his rounds, is alleged to have appeared at approximately 2:30 PM while plaintiff was out of the housing unit. Each bunk is equipped with pillow, mattress, and blankets. Since plaintiff's bed and the making of his bed is not mentioned in the incident report or supporting memorandums, these descriptions prove that plaintiff's bed was made in accordance with policy and unit standards. <u>See</u> Exhibit H. Plaintiff's bed was neatly made, as he had left it, when he was called back to the housing unit and this stack of books was not on his bunk.

12. In the photograph of plaintiff's bunk there is no mattress, there is no pillow, and there are no blankets. <u>See</u> Exhibit I. As stated in both Incident Report Supporting Memorandums, "Inmate Cortez, who also lives inside this cubicle, identified that all of the books and papers belonged to inmate Poullard." However, the name "Cortez" is partially visible on one of the books that allegedly "belonged to inmate Poullard." <u>See</u> Exhibit J. All of these photographs were taken after the plaintiff had been escorted to the Lieutenant's office.

13. While confined in S.H.U. for these trumped up charges, plaintiff requested copies of all photos in accordance with the Freedom of Information Act but the

central office did not acknowledge this request.  See Exhibit K.  Xerox copies

of these photos were attached to plaintiff's DHO report, and although they are

somewhat helpful, color or high quality copies are needed for a more thorough

examination of the evidence.

14.  In the long overdue denials of plaintiff's regional and central office appeals,

the Bureau of Prisons asserts that plaintiff was in possession of contraband

books from the chapel.  This is utterly false.  On August 8, 2006, plaintiff

requested information from the institution's chaplain regarding these charges

and the chaplain's response disproves these "contraband books" allegations.

See Exhibit L.

15.  P.S. 5580.07 page 2, section 3, ¶ (b) states that "Contraband items found

in the possession of inmates or in inmate living or work areas **will be properly**

**identified, processed, and discarded."**  (emphasis added)  The Bureau of Prisons,

in its responses to plaintiff's regional and central office appeals, asserts

that the plaintiff was in "possession of several books belonging to other inmates."

Fifty books were confiscated as contraband and the plaintiff established ownership

of all fifty books on August 18, 2006.  See Exhibit M.  None of the "other

inmates" were identified and contraband, according to the aforementioned policy,

is to be discarded.  Since all of these books were returned to the plaintiff,

they are not, and were never contraband.

16.  C.F.R. § 553.12 states that **"Items possessed by an inmate ordinarily are not**

**considered to be contraband if** the inmate was authorized to retain the item

upon admission to the institution, **the item was issued by authorized staff,**

purchased by the inmate from the commissary, or purchased or **received through**

**approved channels** (to include approved for receipt by an authorized staff member

**or authorized by institution guidelines)."**  (emphasis added)  The Bureau of

Prisons asserts in its responses to plaintiff's appeals that the Technical Manual

for Religious Services found in his possession was contraband, but as stated

in plaintiff's DHO report, this Manual was fowarded to the plaintiff via standard
institution mail.  See Exhibit N.

17.  Plaintiff was not aware that said Technical Manual was contraband, and had
he known this, plaintiff would not have asked that it be mailed into the institution.
Nevertheless, standard institution mail is an approved channel and this channel
is "authorized by insitution guidelines."  Mail room staff is responsible for
inspecting incoming mail for contraband and once mail is inspected it is then
"issued by authorized staff."  The Bureau of Prisons issued the Technical Manual
in question to the plaintiff at "mail call."  Now, after having given this Manual
to the plaintiff, the defendant has charged and punished the plaintiff for
possessing an item that was issued to him through an approved channel "by authorized
staff."  These charges and punishment are therefore malicious and unlawful.

18.  In its central office response to plaintiff's appeal the defendant states that
"Each of your (plaintiff's) Due Process rights were upheld during the discipline
process."  This is a barefaced lie.  Plaintiff, since his transfer from Oakdale
FCI in 1998, has maintained constant phone contact with his mother and father
who live in Beaumont, Texas.  Plaintiff has often called his parents on a near
daily basis for weeks, and occasionally, months at a time.  Although both of the
plaintiff's appeals were initially ignored by the defendant, plaintiff's sanctions
were not lifted until November 7, 2006, one day before the 90 day term of
punishment expired.  See Exhibit O.

19.  By definition, due process is the just and proper method of operation in
a procedure or proceeding.  Plaintiff's regional appeal was received at the
regional office on August 24, 2006, and on 9/18/06 the mandatory response date
for this appeal was extended to October 23, 2006.  The regional office did not
respond to plaintiff's appeal within the time frames established by the Code of
Federal Regulations, or its own notice of extension, and the defendant refused
to lift plaintiff's sanctions as requested in this appeal.  See Exhibit C and D.

-5-

20. Plaintiff's central office appeal was received at the central office on October 31, 2006, and on 12/7/06 the mandatory response date for this appeal was extended to December 30, 2006. See Exhibit P. The central office did not respond to plaintiff's appeal within the time frames established by the Code of Federal Regulations, or its own notice of extension, and the defendant imposed sanctions without permitting the plaintiff to appeal. When the defendant did respond (in January 2007), plaintiff had already completed the entire term of unjust punishment with the exception of one day. Plaintiff was denied community and family contact, via telephone use, for 89 days and the defendant showed no consideration for his due process rights.

21. As a direct and proximate result of the acts of the defendant the plaintiff lost his natural rest and sleep, suffered pain and emotional trauma, depression, humiliation, anxiety and apprehension, and was made to feel that his sincerely held religious beliefs were inferior to the religious beliefs of others.

22. Deliberately discriminating against a prisoner because of his religious or ethnic attributes or giving a prisoner additional punishment without due process are acts which the Bureau of Prisons knew or should have known, are constitutional violations. Bivens v. Six unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

### COUNT TWO

23. As evident by the allegations in paragraphs 6-22 of this complaint, the defendant has knowingly, willfully, and maliciously disparaged plaintiff's religion and has imposed wrongful additional punishment upon the plaintiff without due process. Because of this, plaintiff's constitutional rights have, and continue to be violated.

### Relief Requested

24. Plaintiff, as a direct and proximate result of the defendant, as aforesaid, has been damaged in the amount of $ 22 million dollars.

Plaintiff further seeks costs, attorney's fees, and any further relief that the court shall deem just and proper.

**Verification**

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.  Signed this ___6th___ day of March, 2007.

Respectfully submitted,

Ryan Poullard # 06429-078
(Shangowande Orunmila)
P.O. Box 26020
Beaumont, TX 77720-6020

-7-

Exhibit A



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

---

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

September 24, 2004

Mr. Ryan Poullard
Reg. No. 06429-078
P.O. Box 26020
Beaumont, Texas 77720-6020

Dear Mr. Poullard,

We have reviewed your request to introduce "Ifa" at FCI Beaumont
(Low).  After a thorough evaluation of your documentation, we
have approved your request.  The Warden may make local decisions
regarding the specific request of this group, taking into
consideration Bureau policy, supervision capabilities, security
interest, and the safe and orderly running of the institution.

Sincerely,

Matt Harness
Regional Chaplaincy Administrator


cc:  R. Childress, Warden
     FCI Beaumont (Low)

Exhibit B

BP S148.055     **INMATE REQUEST TO STAFF MEMBER**     CDFRM

SEP 98

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) | Date: |
|---|---|
| **Mack Praytor  Supervisory Chaplain** | **11/22/05  (43 A.D.)** |
| From: **Shangowande Orisha-nla** <br> Ryan Poullard | Register Number: <br> **06429-078** |
| Work Assignment: <br> **Safety** | Unit: <br> **SA** |

**SUBJECT:** Briefly state your question or concern and the solution you are requesting. Continue on the back if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Please provide me with the name of the staff member directly responsible for the "Yoruba/Santeria" and "General Yoruban Program" misnomers that were placed upon the Ifa faith group. Also, please include the address at which said staff member's official duties are performed.

Thank you for your assistance.

(Do No Write Below This Line)

DISPOSITION:

What ?

| Signature Staff Member: | Date: |
|---|---|
| | 11/28/05 |

BP S148.055     **INMATE REQUEST TO STAFF MEMBER**     CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**        FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) **Mack Praytor Supervisory Chaplain** | Date: **1rst Submittal**     **2nd Submittal** **11/22/05 (43 A.D.) 11/30/05 (43 A.D.)** |
|---|---|
| From: **Shangowande Orisha-nla** Ryan Poullard | Register Number: **06429-078** |
| Work Assignment: **Safety** | Unit: **SA** |

SUBJECT: Briefly state your question or concern and the solution you are requesting. Continue on the back if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Please provide me with the name of the staff member directly responsible for the "Yoruba/Santeria" and "General Yoruban Program" misnomers that were placed upon the Ifa faith group. Also, please include the address at which said staff member's official duties are performed.

Thank you for your assistance.

(Do No Write Below This Line)

DISPOSITION:    What Are you Asking for ?

Signature Staff Member:

Date: 12/5/05

Submitted on _his 19 day of January, 2007.

BMC 1330.13
[date]
Attachment,A

### Deputy Warden Quintana

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, Administrative Remedy Program, (Dec. 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmates Name: Shangowande Orunmila Ryan Poullard     Reg. No. 06429-078     Unit, SA

Specific Complaint and Requested Relief: My New and Unfamiliar Religious Components submittal plainly stated that the name of my religion is "Ifa." On September 24, 2004, my religion, "Ifa," was approved for introduction at FCI Beaumont (Low). See Attachment. The Regional Chaplaincy Administrator's approval letter did not mention Yoruba, Yoruban/Santeria or General Yoruban Program, only "Ifa." However, my faith group has been continually referred to, and labeled as, everything but "Ifa." These intentional misnomers are offensive, discriminatory, and completely unacceptable. This informal resolution attempt will serve as legal notice. Should any of your subordinates at this institution use any name other than "Ifa" when addressing, or making reference to my religion, both you, the CEO of this institution, and said staff member will be personally liable in civil action. Please address any concerns in your response.

Efforts Made By Inmate To Informally Resolve Grievance(Be Specific)

Counselor's Comments:

Submitted on this 19th day of January, 2007.

BMC 1330.13
[date]
Attachment,A

### Chaplain Watanabe

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, <u>Administrative Remedy Program,</u>(Dec. 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Shangowande Orunmila

Inmates Name:_____Ryan Poullard_____ Reg. No._06429-078____ Unit, SA

Specific Complaint and Requested Relief:__On September 24, 2004, my religion,

"Ifa," was approved for introduction at FCI Beaumont (Low). See Attachment. My New and

Unfamiliar Religious Components submittal plainly stated that the name of my religion is

"Ifa." The Regional Chaplaincy Administrator's approval letter did not mention Yoruba,

Yoruban/Santeria or General Yoruban Program, only "Ifa." However, the chapel locker for

my faith group bears a Yoruba label. The current chapel schedule lists my faith group

as General Yoruban Program. The Catholic faith group is not listed as General Roman

Program, nor does its locker bear a Roman label. We are the only faith group that has

been intentionally misnomered. This is an offensive, discriminatory & racist gesture that

will not be tolerated any longer. Change the label on our chapel locker and our listing

on the current chapel schedule to Ifa immediately. If it will not be changed immediately

as requested herein, provide me with the name, title, and work address of the staff

member(s) directly responsible for this disparaging misnomer.

Efforts Made By Inmate To Informally Resolve Grievance(Be Specific)

Counselor's Comments:_____

<u>Exhibit C</u>

RYAN EDWARD POULLARD, 06429-078
BEAUMONT LOW FCI    UNT: SA    QTR: S04-055L
P.O. BOX 26025
BEAUMONT,  TX 77720

POULLARD, Ryan             REG. NO. 06429-078    RECEIPTED: 8/24/06

CASE NO. 425337-R1         PART B - RESPONSE

You are appealing the Discipline Hearing Officer (DHO) action of
8/08/06, for Code 305, Possession of Anything not Authorized, and
Code 330, Being Unsanitary or Untidy.

The record of this disciplinary action reflects you were advised
of your rights and afforded the opportunity to exercise those
rights in accordance with Program Statement 5270.07, <u>Inmate
Discipline and Special Housing Units</u>.  After thorough review of
the incident report, the investigation, the evidence and related
documentation, there appears to be sufficient evidence presented
to support the DHO's decision.

This incident involved the DHO finding you possessed contraband
books, a Technical Manual for Religious Services, and finding you
Being Unsanitary or Untidy.  Specifically, on 7/19/06, the
reporting officer discovered you in possession of several books
belonging to other inmates, books from the Chapel, a SENTRY
Technical Manual for Religious Services, as well as decomposing
food items with a foul odor in your locker.  The reporting
officer attempted to resolve the incident informally, which you
refused.  The DHO took into account your statement, and
considered all the facts and evidence at the DHO hearing to make
the determination the greater weight of evidence indicated you
did commit the prohibited acts.

The sanctions imposed are within policy and commensurate with the
finding you committed the prohibited acts in the Moderate
severity category.  You provide no new evidence that has not been
previously considered.

Therefore, your request for relief at the Regional level is
denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, NW, Washington, D.C. 20534.  Your appeal
must be received in that office within 30 days from the date of
this response.


_1/23/07_                    _____
Date                        G. Maldonado, Jr.
                            Regional Director

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From:    **Shangowande Orisha-nla**
a/k/a Poullard, Ryan E.     06429-078     SA     FCC Beaumont Low

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**    On 8/8/06, after hearing incident report #1491830, the DHO found that I "committed the prohibited act of Code 305, Possessing unauthorized items and Code 300, Being unsanitary." In section III of the Discipline Hearing Officer Report the DHO stated that photographs were relied upon as evidence and that these photos indicated "the disarray of the area in question to include your locker." The DHO in section VII of this report also states that "possessing unauthorized items and being unsanitary will not be tolerated in the correctional environment. It can have extremely serious repercussions for both staff and inmates, since it tends to result in further disruptive and violent behavior. The sanction of loss of commissary and telephone for 90 days (each) are imposed as an immediate sanction to show you this type of offense is of a serious nature and merits serious sanctions." It is impossible for me to describe how insulting these words are. Nearly two years ago (9/24/04) my religion, Ifa, was approved by the South Central Regional office's Chaplaincy

8/17/06
DATE                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE             CASE NUMBER: 425337-R1

**Part C—RECEIPT**

AUG 24 2006            CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Administrator.  During the month of October 2004 I made two separate attempts (Remedy ID numbers 354786-F1 and 355510-F1) to request "that all materials and accommodations listed in my New and Unfamiliar Religious Components submittal be made available to the Beaumont Low Ifa community immediately," but these requests were rejected and the issues raised in them were ignored.  I had been harassed by several staff members, on several occasions, for having religious shrines (offerings included) in my locker.  On or about 10/21/04 I submitted a Regional appeal package to my unit Counselor and completed the requisite package form.  This appeal package was held by institution staff for more than two entire months before being forwarded and was subsequently rejected by the Regional Office for being untimely (Remedy ID 354786-R1).  I appealed to the Central Office but this appeal (Remedy ID 354786-A) was also rejected and the issues raised therein were completely ignored.  During the month of August 2005, the Religious Services Department issued a "Memorandum for All Inmate Religious Groups." **See Attachment A.**  This memo instructed inmates to "take the time to review your group's needs for the upcoming fiscal year and type a list of materials by priority (the greatest need at the top of the list)."  Its closing line stated that "prompt attention in this matter will help ensure your community's religious needs are met in the months ahead."  In compliance with this memo, a purchase list for the Ifa community was submitted which clearly indicated that our "greatest need" was an outdoor Ifa lodge at which daily offerings and libations would be made.  **See Attachment B.**  Books were purchased in lieu of the outdoor Ifa lodge materials, and our prayer needs were ignored.  On 6/02/06 I submitted an 'Inmate Request' to Deputy Warden Quintana which addressed several religious needs, including worship materials. **See Attachment C.**  The kind and understanding Deputy Warden denied this request.  **See Attachment D.**  After being handcuffed, escorted and confined to the SHU, having a huge and embarrassing spectacle (photos taken in a housing unit full of nosy and insensitive inmates) made of my religious offerings, sleeping on the floor as the third man in a two man cell for 19 days, and having my religious beliefs questioned and ridiculed by the DHO, the over achieving Chaplain finally decided to tell me how he wants my offerings to be made.  **See Attachment E.**  This is absolutely unreal.  Ifa is not a "tidy religion" and that is why an outdoor Ifa lodge was included in my submittal.  I can not determine what is to be used as an offering (contraband excluded) and neither can the Chaplain, because these determinations are made via divination.  This matter was clearly addressed on page 4 of my Ifa New and Unfamiliar Religious Components submittal.  Furthermore, how can I use hard candies or sealed food items from Commissary if I don't have any money?  Should a believer who is placed on Commissary restrictions, like I am at present, be expected to stop praying until he can purchase an offering that is pleasing to the Chaplain?  I am too upset to continue and I only have one pen, so I have to use its ink wisely since it will be a while before I can buy another one.  Please lift these commissary and phone sanctions immediately, expunge these charges, and see to it that the outdoor Ifa lodge and other religious needs of my faith group are provided with all deliberate speed.

                              Thank you for your assistance.

**Attachment A**



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

**Federal Correctional Complex, Beaumont**                  **Beaumont, Texas 77720**

August 25, 2005

MEMORANDUM FOR ALL INMATE RELIGIOUS GROUPS

FROM:              MACK PRAYTOR, SUPERVISORY CHAPLAIN

SUBJECT:           Purchases for FY 2006

The Religious Services Department is requesting each religious community to present their requests for books, videos, and other community religious material for FY 2006. Please take the time to review your group's needs for the upcoming fiscal year and type a list of materials by priority (the greatest need at the top of the list). Handwritten lists will not be accepted. This list must be completed and turned in to the Chaplain no later than Monday, October 17, 2005.

While preparing the list keep the following in mind:

1. The list you submit is ONLY A RECOMMENDATION. The Chaplain makes the final determination of what is purchased for the department. Therefore, just because you request something doesn't mean it will be purchased.

2. Due to the recently developed Standard Operating Procedures, materials must be considered religious in nature. These materials will not contain profanity; descrimination based on gender, race or religion; or contain language which may be interpreted as a threat to the safety, security or orderly running of the institution.

3. The Chaplain has the responsibility to manage the budget equitably among the numerous religious groups.

4. Additional lists will not be accepted after October 17, 2005. Any list submitted after October 17 will be returned.

5. Lists that are not typed will be returned.

Thank you for taking the time to assist in this request. Your prompt attention in this matter will help ensure your community's religious needs are met in the months ahead.

07 0825

FILED

MAY - 4 2007

cc: AW(C)
    File

Attachment B

**FY 2006 Purchase List**

**for**

**The Ifa Community**

| Item/Title | Author/Musician | Vendor # |
|---|---|---|
| Sacred objects and representations for outdoor (Ifa lodge) shrines. [Shango, Egun (Ancestors), Olokun, Ogun, Oshun, Ibeji, Shopona (Babaluaiye), Yemowo (Yemoja), Orisha-nla (Obatala), Oya, Eshu (Real Eshu Yangi's), Orunmila, and Oduduwa]. | | 2 |
| Orisha carvings and sacred representations for chapel shrines. [Same as above]. | | 2 |
| Consecrated drums (talking drums included). | | 2 |
| Beaded calabashes. | | 2 |
| Gongs. | | 2 |
| White candles. | | 2 |
| Consecrated Black Soap. | | 2 |
| Congregational **Obi** Divination Implements (Straw casting tray included). | | 2 |
| Containers (cups or small dishes) for water to be used in chapel meetings. | | – |
| "Ifism: The complete Works of Orunmila" (All Volumes). | C. Osamaro Ibie | 1 |
| "The Sacred Ifa Oracle" | Afolabi A. Epega & Phillip Neimark | 1 |
| Materials for Offerings [Kolanuts (plain, bitter, & white), cowrie shells, Red Parrot feathers, Peacock feathers, Loose Beads & fishing line or suitable substitute for stringing beads]. | | 2 |
| Traditional straw prayer mats. | | 2 |
| Pillows for meditation and divination. | | – |
| Incense [Myrrh, Sweet Almond, Frankincense (olibanum), Rose, Lavender, Jasmine, Sage, Lotus, Cedarwood, Honeysuckle, Cinnamon, Lily of the Valley, Jasmine, Spearmint, & Sandalwood]. | | – |
| "Yoruba: Mo On Ko, Mo On Ka; Know how to Write It, Know how to Read It." | Adebusola Onabajo Onayemi | 3 |
| Egbe Omo Anago Series– Orisha Obatala Parts 1&2 | Cassettes | 1 |
| " Orisha Oshun Parts 1&2 | | |
| " Orisha Shango Parts 1&2 | | |
| " Orisha Ogun | | |
| CD– Festival of Deities | Chief Bolu Fatunmise | |

07 0825

FILED

MAY – 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Item/Title | Author/Musician | Vendor # |
|---|---|---|
| "African Drumming" (Video) | Babatunde Olatunji | 5 |
| "Yoruba Modern Practical Dictionary: Yoruba-English; English-Yoruba." | J. Fakinlede | 4 |
| "Kalani: African Beats" | Video | 5 |

## Vendors

**#1–** Yoruba Book Center
610 New York Ave.
Brooklyn, NY 11203
Tel: (718) 774-5800
Fax: (718) 467-0099
Email:
atheliahenriettapress@yahoo.com

**#2–** Ile Awise Ifa
4321 Cardinal Drive
Dallas, Tx 75216
Tel: (214) 372-3754
     (214) 372-3637

**#3–** Bis Bus International
40 Alana Drive
Barrie, Ontario
L4N 7K8 CANADA
Tel: (705) 728-1697
Tel/Voice Mail/Fax: (705) 728-0980
Email: info@learnyoruba.com
Web site: www.learnyorub.com

**#4–** Barnes & Noble

**#5–** Warner Bros. Publications
15800 NW 48th Avenue
Miami, Florida 33014
Tel: 1-800-327-7643
     (305) 620-1500
Fax: (305) 621-4869
Email:
wbpsales@warnerchappell.com

<u>**Attachment C**</u>

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 93

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) **Deputy Warden Quintana** | DATE: 6/02/06 (43 A.D.) |
|---|---|
| FROM:   **Shangowande Orisha-nla** **Ryan Poullard** | REGISTER NO.: 06429-078 |
| WORK ASSIGNMENT:   **SA Unit Orderly** | UNIT: SA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be interviewed in order to successfully respond to your request.)

I am a devotee of Ifa, an officially approved faith group that was authorized for introduction at this facility well over a year ago.  However, the materials, requisite accommodations, and the meeting of our fundamental religious needs have been totally neglected by institution staff.  We are the only non-christian faith group that does not have its own locker for supplies and literature.  The approved "New & Unfamiliar Religious Components" submittal stipulated two meetings per week, one for study/instruction and the other for prayer/meditation, but more than a year later this simple need has not been met.  Worship materials were also included in this approved submittal, but more than a year later we have none.  We are the only faith group in the Bureau of Prisons that is not allowed to celebrate its holy days, even though these holy days were officially approved via "New & Unfamiliar Religious Components" established procedure.  In May 2006,

(Do not write below this line)

DISPOSITION:

07 0825
FILED
MAY - 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

<u>Attachment D</u>

**RESPONSE TO INMATE REQUEST TO STAFF MEMBER**

POULLARD, RYAN
Reg. No. 06429-078
Unit: SA

This is in response to your Inmate Request to Staff dated June 6, 2006, in which you state your religious needs are being neglected by staff. Additionally, you note your group does not have it's own locker for supplies and literature. Further you request two meetings per week instead of one, and you claim worship materials have not been purchased for your group. Finally, you remark you are not allowed to celebrate your holy days. An investigation of your request reveals Ifa, your religion, has been approved to meet during the same time and space as other Yoruban-based religious groups. The Yoruban group has a locker and is labeled accordingly. There are several religious groups who meet once a week in the Chapel. On May 7, 2006, the General Yoruban group's time in the Chapel was doubled from one to two hours for the weekly scheduled meeting. Books and literature you have requested have been purchased. Other items will be forth coming as the budget allows.

Regarding your request to observe June 8 and 9, 2006, as days of work proscription to observe "Shopona," the chaplain requested you to provide documentation that your religion mandates these days off from work to observe work proscription. As of today's date, you have not provided sufficient documentation to confirm why you cannot work on the days you requested. Therefore, your request is denied.

_____          _6-13-06_____
Francisco J. Quintana, Deputy Warden          Date

07 0825

FILED

MAY — 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Attachment E**

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Chaplain Watanabe | DATE: 8/9/06 |
|---|---|
| FROM: Sàngòwàndé Òrìsà-nlá / Ryan Poullard | REGISTER NO.: 06429-078 |
| WORK ASSIGNMENT: Unit Orderly | UNIT: SA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be interviewed in order to successfully respond to your request.)

Since the institution has not provided my faith group's approved outdoor Ifá lodge, I have had no choice but to place my daily prayer offerings in my locker. Because I didn't have a chapel memo or some sort of written permission to pray, I was written an incident report and taken to the S.H.U. for having offerings in my locker. Please give me some sort of written permission to use my locker as a substitute for the approved outdoor Ifá lodge.

Thank you.

(Do not write below this line)

DISPOSITION:

07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**TO: POULLARD, RYAN**                                **FCC BEAUMONT (Low)**
**Reg. No#. 06429-078**
**Unit: SA**

**SUBJECT: Offerings in your locker**

This is in response to your Inmate Request to Staff dated August 9, 2006 in which you request a memo granting permission to use your locker as an alter.

An investigation to your request reveals we are not forbidding the use of the locker as an alter or shrine for your religion.  However; it is never permissable to keep spoiled or rotten food in the locker.  As an alternative, use hard candies or sealed food items from Commissary.  If the food begins to spoil, dispose of it in a timely manner.  A memo circumventing hygenic policies cannot be issued from this office.

Thank You,

James Watanabe, Chaplain

*Where in my request did I ask for a memo circumventing hygenic policies?*

Exhibit D

RYAN EDWARD POULLARD, 06429-078
BEAUMONT LOW FCI     UNT: SA     QTR: S04-055L
P.O. BOX 26025
BEAUMONT,  TX 77720

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attach-ments must be submitted with this appeal.

From: __Shangowande Orunmila__
      __a/k/a Poullard, Ryan E.__
      LAST NAME, FIRST, MIDDLE INITIAL      06429–078      SA      FCC Beaumont Low
           REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**  On 8/24/06, my regional appeal of incident report # 1491830 was received at the Regional Office. On 9/18/06 the mandatory response date for this appeal was extended to 10/23/06. It is now 4:08 PM on this 24th day of October, 2006, and I have not received the requisite response. However, my phone and commissary accounts are still presently restricted. Please lift these sanctions immediately, remove these charges from my chronological disciplinary record, and see to it that the outdoor Ifa lodge and other religious needs of my faith group are provided with all deliberate speed.

Thank you for your assistance.

__10/24/06__
DATE                                      SIGNATURE OF REQUESTER

**Part B—RESPONSE**

**RECEIVED**

OCT 3 1 2006

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

**Part C—RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
GENERAL COUNSEL

CASE NUMBER: _____

CASE NUMBER: _____

**Administrative Remedy Number 425337-A1**
**Part B - Response**

You appeal the August 8, 2006, decision of the Discipline
Hearing Officer (DHO) regarding incident report #1491830, in
which you were found to have committed the prohibited act of
Possession of Anything Not Authorized, Code 305 and Being
Unsanitary or Untidy, Code 330.  You request expungement of the
incident report.

Our review of your disciplinary proceedings indicates
substantial compliance with Program Statement 5270.07, Inmate
Discipline and Special Housing Units.  The DHO's decision was
based upon the greater weight of the evidence as detailed in
Section V of the DHO report.  We find it reasonable for the DHO
to have made this determination.  Records indicate you appeared
before the DHO, were advised of your rights, and made a
statement.  The DHO gave greater weight of the evidence to the
reporting officer's account of the incident.  Although you
dispute the charge, the evidence is sufficient to support the
finding.

On July 19, 2006, the reporting officer discovered you in
possession of several books belonging to other inmates, books
from the Chapel, a SENTRY Technical Manual for Religious
Services, as well as decomposing food items with a foul odor in
your locker.  The reporting officer attempted to resolve the
incident informally, which you refused.  We find the DHO met the
standards of fairness, impartiality, and burden of evidence on
witch to base the finding you committed the prohibited act as
charged.

Based on our review of the disciplinary record, we find the
required disciplinary procedures were substantially followed.
Each of your Due Process rights were upheld during the
discipline process.  The greater weight of the evidence supports
the DHO's decision, and the sanctions imposed were commensurate
to the severity level of the offense and in compliance with
policy.

Your appeal is denied.

_January 31, 2007_
Date

_Joe Delia Ris_
Harrell Watts, Administrator
National Inmate Appeals

Exhibit E

**INCIDENT REPORT**     1491830

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| 1. NAME OF INSTITUTION: **FCI BEAUMONT-LOW** | | | | |
|---|---|---|---|---|
| **PART I  -  INCIDENT REPORT** | | | | |
| 2. NAME OF INMATE:<br><br>Poullard, Ryan  Edward | 3. REGISTER NUMBER:<br><br>06429-078 | 4. DATE OF INCIDENT:<br>07-19-2006 | 5. TIME:<br><br>2:40 PM | |
| 6. PLACE OF INCIDENT:<br><br>UNIT SA | 7. ASSIGNMENT:<br><br>ORDERLY UNIT SA | 8. UNIT:<br>s04-051u | | |
| 9. INCIDENT:refusing to obey an order of any staff member<br>        possession of anything not bauthorized<br>        being unsanitary or untidy<br>        stealing , including data/printouts from automated equipment<br>        adulteration of any food or drink. | | 10. CODE307/305/330/219/209 | | |

11. Description of Incident  (Date:07-19-2006 Time:10:30 AM    Staff became aware of incident)
At approximately 10:30 AM while conducting unit rounds I walked  in to cell S04-051U and discovered several books and several stacks of what appeared to be personal papers. Knowing that this items posed both a safety and a security concerned , I ask inmate  Poullard # 06429-078 if this items belong to him? inmate Poullard acknowledge to being the owner of all the items that I pointed out to him in  cell s04-051u I than  explained to him that he needed to move all his personal papers and books to the units center storage , I also explained to him that cell 51-u is a handicap cell and that the room was getting to crowded due to three inmates being housed in that cell and one of the inmates is a paraplegic person. Inmate Poullard stated to me that he was tired of being told about his property, inmate further stated that he needed to have all this items in his cell  due to his ongoing legal battle with the BOP and that all his books were all religious materials.

At 2:40 PM After several attempts to informally resolve the problem , Inmate Poullard became verbally aggressive and became  more defiant to move his personal property to the storage room. Inmate Poullard  made the following statements I will not move this religious books or legal work , I need
an extra locker to put this items in this cell. During this time Counselor Gibbs assisted me by opening inmate's Poullard locker, Upon opening the locker a foul smell came out of  inmate Poullard 's  locker. Upon the opening of the locker I discovered several  food items that were in decomposing state . At this point Case Manager Merendino explained to inmate Poullard that he needed to remove all that wasted food items ,inmate Poullard stated that it was his religious offerings. I explained to him that  no special permission was given to him to place and store wasted food, I explained to him the safety and the sanitary problems that myself and Mr. Merendino had? At this point I ordered inmate Poullard to clean his entire area and to remove the wasted material and to place his personal papers and books to the center storage. Inmate Poullard refused by making the following statement " If you want me to clean my religious food offerings, send me to the hole" inmate Poullard was escorted to the Lieutenants office and was placed in the Special Housing Unit. During the inventory of the inmate Poullards property I discovered several books that belong to other inmates and to the FCILBeaumont Chapel. A Sentry Technical Manual for religious services was also found on his property. several copy's of his  staff request were  found with his name on them detailing sentry terminology.

07 0825
FILED

| 12. SIGNATURE OF REPORTING EMPLOYEE: | TIME AND DATE<br>6:00PM / 07-19-2006 | 13. NAME AND TITLE (Printed):<br><br>L.Mello, Counselor unit SA |
|---|---|---|

MAY – 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED<br>7/20/06 | 16. TIME INCIDENT REPORT DELIVERED<br>2:05 |
|---|---|---|

**PART II - COMMITTEE ACTION**

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT: I did not refuse to remove books and papers. SCRO approved my religion which requires daily offerings. They do not give adequate space so I had to keep it in my locker. Based on eyewitness report and written version and statements of other witnesses.

| 18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU: | B. ___ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING |
|---|---|
| ___ COMMITTED THE FOLLOWING PROHIBITED ACT.<br><br>___ DID NOT COMMIT A PROHIBITED ACT. | C. ___ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDAR DAYS. |

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION: Refer to DHO and recommend dissalow GT, change of quarters, and commissary restriction.
07/21/06, at 2:50pm

Exhibit F



**U.S. Department of Justice**

*Federal Bureau of Prisons*

---

*Beaumont, Texas  77720*

07-19-2006

MEMORANDUM FOR  Incident Report Supporting Memo

FROM:              D. Gibbs, Correctional Counselor

SUBJECT:              Inmate Poullard #06429-078

    Counselor Mello asked me and Case Manager Merendino to walk over to cube 51 in SA. When we arrived at cube 51, I observed numerous books and papers stacked up against the wall inside the cubicle. There were books also stacked up on top bunk. This bunk is assigned to inmate Poullard #06429-078. These books and papers were identified by inmate Cortez, who also lives inside this cubicle, as to belonging to inmate Poullard. Counselor Mello then contacted control center and requested that inmate Poullard return to the unit SA. I then opened up inmate Poullard's locker at which was found on the bottom left side of the locker numerous items. Some of the items were cookies, sugar cubes, smoked oysters and various other items that were not sealed in a container or wrapper. Inmate Poullard arrived and Counselor Mello asked inmate Poullard why he did not get rid of the books that he was asked to. Inmate Poullard stated that he did not have enough room in his locker to place the items. Case Manger Merendino asked inmate Poullard as to why he did not have enough room in his locker. Inmate Poullard stated that his locker was used as his offering place. He then stated that the Bureau of Prisons had not provided him a place outside the housing unit to place his religious offerings and he was forced by the Bureau of Prisons to place the offerings inside his locker. Inmate Poullard was given a direct order by Counselor Mello  to clean his area up and put the books and papers away. Inmate Poullard stated if you can just send me to special housing if you make me do that. Inmate Poullard continued to be defiant towards Counselor Mello by not following his orders to clean his cell.

07 0825

FILED

MAY ~ 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit G



**U.S. Department of Justice**

*Federal Bureau of Prisons*

---

*Beaumont, Texas  77720*

07-19-2006

MEMORANDUM FOR  Incident Report Supporting Memo

FROM:            S. Merendino

SUBJECT:         Inmate Poullard 06429-078

     On 07-19-2006 at approximately 2:30 P.M., Counselor Mello asked me to walk over to Cube 51 in SA. Upon arrival, I observed numerous books and papers stacked up against the wall inside the cubicle. Additionally, there were books stacked up on top of the upper bunk. This bunk is assigned to inmate Poullard 06429-078. Inmate Cortez, who also lives inside this cubicle, identified that all of the books and papers belonged to inmate Poullard. Counselor Mello contacted control and requested that inmate Poullard return to the unit. Counselor Gibbs opened up inmate Poullard's locker. On the bottom left side of the locker, there were numerous items laying on the bottom. Some of the items were cookies, sugar cubes, smoked oysters and various other items that were not sealed in a container or wrapper. Upon the arrival of inmate Poullard, Counselor Mello asked inmate Poullard why he had not put away the books that he was asked to do by Counselor Mello. Inmate Poullard stated that he did not have enough room in his locker to place the items. I asked inmate Poullard what the items were for in the bottom of his locker, and he replied that it was a religious offering for his religious beliefs. He stated that the Bureau of Prisons had not provided him a place outside the housing unit to place his religious offerings and he was forced by the Bureau of Prisons to place the offerings inside his locker. By placing these items inside his locker, it clearly is a sanitary issue inside the cubicle. Counselor Mello attempted to counsel inmate Poullard but kept getting interrupted by inmate Poullard. I informed inmate Poullard that he could not leave the books and papers laying out and the items needed to be placed inside his locker, and he replied that he would not be able to due to having to display his religious offerings inside his locker. I informed inmate Poullard if he needed a place for his legal material that he would provide him a place in a secured area that he would have access to these materials and he replied that he did not want to do this because he has had staff steal his paperwork in the past. Counselor Mello gave inmate Poullard a direct order to clean his area up and put the books and papers away and inmate Poullard stated if you are going to make me do that you can just send me to special housing. Counselor Mello stated to inmate Poullard that going to special housing would not solve the problem. Inmate Poullard continued to be defiant towards Counselor Mello, Counselor Gibbs, and me. At this time, Counselor Mello and Counselor Gibbs escorted inmate Poullard to the Lieutenant's office.

07 0825

FILED

MAY — 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit H





07 0825

FILED

MAY — 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>Exhibit I</u>



07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit J



07 0825

FILED

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit K

To:                                              Date:

Case Manager Garrison                            7/30/06 (43 A.D.)

From:                                            Reg#:

Sàngòwàndé Orìsà-ilá                              06429-078
Ryan Poullard

Work
Assignment: Unit Orderly                         Unit:
                                                 5A (currently in S.H.U.)


Subject:

        In accordance with the 'Freedom of Information Act' please
provide me with copies of the "statements of other witnesses" mentioned
in section 19 of incident report number 1491830 along with all other
documents and/or photos that will be used against me in the
upcoming DHO hearing. These copies will be absolutely necessary
for the preparation of my defense.


                    Thank you for your assistance.




Disposition: Mr. Poullard, the incident report and all supporting documents
were forwarded to the DHO. Accordingly, I do not have access to
the items you have requested. Furthermore, any FOIA requests
need to be made to the Central Office at the following address:
        Director FBOP
        FOIA/PA Request
        320 First Street NW
        Washington, DC. 20534

Signature of Staff Member:                       Date: 8/1/06

Freedom of Information Request

August 6, 2006

Dear Sir,

Please provide me with copies of all written statements, photos, and documents that were used by FCI Beaumont-Low staff members to support the acts alleged in FBOP Incident Report # 1491830. This incident report was written by Correctional Counselor L. Mello at 6:00 PM on 7/19/06, delivered to myself on 7/20/06, referred to the DHO by the UDC at 2:20 PM on 7/21/06, and is presently in the possession of the DHO assigned to Beaumont's Federal Correctional Complex. To refute these allegations, and prepare appeals (if applicable) these copies will be an absolute necessity.

Thank you for your assistance.

Sàngówàndé Orìsà-nlá
a/k/a Ryan Poullard

Exhibit L

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Chaplain Watanabe | 8/8/06 |
| FROM: Sangowande Orisa-nla    Ryan Poullard | REGISTER NO.: 06429-078 |
| WORK ASSIGNMENT: Unit Orderly | UNIT: SA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

If the chapel prepared a stolen or delinquent book list
since you have been assigned to the low security institution, please
provide me with a copy, ~~the names an~~ Also, were any books
stolen from or reported as missing from my faith group's locker

Thank you.

_____
(Do not write below this line)

DISPOSITION:

1. Not at this time.
2. None were reported missing.

07 0825
FILED
MAY — 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature Staff Member | Date |
|---|---|
| | 8/8/06 |

Record Copy — File; Copy — Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Exhibit M

U.S. Department of Justice

Federal Bureau of Prisons

**Confiscation and Disposition of Contraband**

---

_J. Mello_
Signature/Printed Name of Staff Member Confiscating Property

_FCIL Bmt_
(Institution)

| 1. Name: Poullard, Ryan | 2. Register No.: 06429-078 | 3. Unit: SA | 4. Date: 7-19-06 |
|---|---|---|---|

5. The contraband listed below was found in possession of, or in the living quarters of the above named inmate on 7-19-06

(Make a numerical list of contraband) ①

50 books with NO I.D.

6. (To be completed by inmate) I have received a list of those items confiscated as contraband. I claim ownership of the following items (identify by number from section 5 above): Nos. _1_ . I am aware that a claim of ownership will not be accepted for any item of government property. With respect to my claimed personal property, I am aware that I have 7 days from receipt of this inventory to provide staff with evidence of my ownership of the claimed items.

I, X_____ (inmate's signature) _____ , received a copy of this inventory on 7-19-06 (date).

7. Of the contraband listed in section 5 above, the inmate has established ownership for the following (identify by number from section 5 above): Nos. _____

Contraband, other than hard contraband, may be mailed at the inmate's expense to a destination of the inmate's choice. The institution may pay for the mailing when the inmate has insufficient funds and no likelihood of receiving new funds. Where the inmate is financially able to pay postage, but refuses, or fails to provide a mailing address for return of the property, the confiscated property will be disposed of through approved means, including destruction of property.

I have read or had read to me the above information. I request the following action be taken in regards to my contraband property.

a. __ I request the property be mailed to _____
_____ . I agree to pay mailing costs.

Inmate's Signature: _____ Date: _____

b. __ I request the institution to pay mailing costs. I have insufficient funds in my institution account and do not expect to receive new funds. (The approval of the Warden or designee is required for the institution to pay postage.)

Inmate's Signature: _____ Date: _____

c. __ Other (specify, e.g., donate to institution) — _Returned 2books    Donated 48 books total_

Inmate's Signature: _____ Date: 8-18-06

8. The following contraband (identify by number from section 5 above) has been determined to be hard contraband or to be contraband for which no ownership has been established. The contraband has been disposed of by (indicate disposition/reasons): Nos. _____

_____
Signature/Printed Name of Staff Member Determining Method of Disposal

_07 0825_
_FILED_

| Date |

_____
Signature/Printed Name of Staff Member Disposing of Property

MAY - 4 2007

| Date |

_____
When Property is Destroyed, Signature/Printed Name of Staff Witness

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Date |

cc: Central File
Chief Correctional Supervisor
Inmate Systems Manager
Inmate

Printed on Recycled Paper

BP-402(58)
January 1983
USP LVN

Exhibit N

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | FCIL Beaumont, Texas | INCIDENT REPORT NUMBER | | 1491830 |
|---|---|---|---|---|
| INMATE NAME | POULLARD, Ryan | REG NO | 06429-078 | UNIT | SA |
| DATE OF INCIDENT | July 19, 2006 | DATE OF INCIDENT REPORT | | July 19, 2006 |
| OFFENSE CODE (S) | 305 / 330 | | | |
| SUMMARY OF CHARGES | Possessing anything unauthorized / Being unsanitary | | | |

## I    NOTICE OF CHARGE (S)

A.    Advanced written notice of charge (copy of Incident Report) was given to inmate on July 20, 2006, at 9:50 am, by C. Jack, Lieutenant.

B.    The DHO Hearing was held on August 8, 2006, at 10:15 a.m.

C.    The inmate was advised of his/her rights before the DHO on July 21, 2006, by S. Baird, Unit Team and a copy of the advisement of rights form is attached.

## II    STAFF REPRESENTATIVE

| A.    Inmate waived right to staff representative | Yes | x | | No | |
|---|---|---|---|---|---|

B.    Inmate requested staff representative and    N/A    appeared.

C.    Requested staff representative declined or could not appear, but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:    N/A

| D.    Staff representative | N/A | | was appointed. |
|---|---|---|---|

E.    Staff representative statement:  N/A

## III    PRESENTATION OF EVIDENCE

| A.    Inmate admits | | denies | | neither | x | the charges. |
|---|---|---|---|---|---|---|

B.    Summary of inmate statement:    "The Bureau does not provide me with a space to offer my sacrifice. so I have my sanctuary in part of my locker.  I do not have enough room in my locker for my personal stuff.  My family sent me the technical manual along with some tarot cards."

| 1.    The inmate requested witness (es) | Yes | x | | No | |
|---|---|---|---|---|---|

2.    The following persons were called as witnesses at this hearing and appeared (include each witnesses' name, title, reg number and statement as appropriate):  N/A

3.    The following persons requested were not called for the reason (s) given:   witnesses (staff) provided supporting memorandums used by DHO - cannot call as witnesses.

| 4.    Unavailable witnesses were requested to submit written statements | Yes | | | No | | | N A | X |
|---|---|---|---|---|---|---|---|---|

MAY ~ 4 200

07 0825

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>Exhibit O</u>

```
  BMLGE          *        INMATE DISCIPLINE DATA        *     02-25-2007
PAGE 001 OF 001 *   CHRONOLOGICAL DISCIPLINARY RECORD   *     10:08:09

REGISTER NO: 06429-078 NAME..: POULLARD, RYAN EDWARD
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 02-25-2007
-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1491830 - SANCTIONED INCIDENT DATE/TIME: 07-19-2006 1440
DHO HEARING DATE/TIME: 08-08-2006 1015
FACL/CHAIRPERSON.....: BML/KELLEY A
APPEAL CASE NUMBER(S): 425337
REPORT REMARKS.......: ADMITTED ITEMS WERE IN LOCKER DUE TO RELIGIOUS REASONS
                       COULD NOT PUT PERSONAL ITEMS LOCKER DUE TO NO SPACE
     305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
          LP PHONE   / 90 DAYS / CS
          COMP:    LAW:    LOSS PHONE UNTIL 11-08-2006
     330  BEING UNSANITARY OR UNTIDY - FREQ: 1
          LP COMM    / 90 DAYS / CS
          COMP:    LAW:    LOSS OF COMMISSARY UNTIL 11-08-2006
-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1317842 - SANCTIONED INCIDENT DATE/TIME: 03-03-2005 1255
UDC HEARING DATE/TIME: 03-08-2005 1945
FACL/UDC/CHAIRPERSON.: BML/SA/THOMAS
REPORT REMARKS.......: 10 HOURS EXTRA DUTY
     311  FAILING TO WORK AS INSTRUCTED - FREQ: 1
          EXTRA DUTY / 10 HOURS / CS
          COMP:    LAW:    10 HOURS EXTRA DUTY
```

```
G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

07 0825

FILED

MAY − 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit P

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: DECEMBER 7, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : RYAN EDWARD POULLARD, 06429-078
      BEAUMONT LOW FCI    UNT: SA    QTR: S04-055L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID       : 425337-A1
DATE RECEIVED   : OCTOBER 31, 2006
RESPONSE DUE    : DECEMBER 30, 2006
SUBJECT 1       : DHO APPEAL - EVIDENCE
SUBJECT 2       : DHO APPEAL - SANCTION
INCIDENT RPT NO: 1491830

07 0825

FILED

MAY − 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**ATTESTATION**
**COMPLAINT FOR DAMAGES**

UNITED STATES DISTRICT COURT      )
FOR THE DISTRICT OF COLUMBIA    )    ss.

COMES NOW, Ryan Poullard (Shangowande Orunmila), the plaintiff in the above entitled action, and states under his oath and under the pains and penalties of perjury that the allegations contained in the foregoing complaint wherein he is the plaintiff and the Federal Bureau of Prisons is the defendant, are the truth according to his best knowledge, information, and belief.

IN WITNESS WHEREOF, he has signed his name hereto this __6th__ day of March, 2007.

Ryan Poullard
(Shangowande Orunmila)
Plaintiff, pro se